## EASLEY v. FLEMING, Temporary Controls Adm'r.

### No. 339.

United States Emergency Court of Appeals.

Heard at Washington, D. C., Oct. 31, 1946.

Decided Jan. 13, 1947.

David A. Fegan, of Washington, D. C., for complainant.

Lewis Leeds, Attorney, of New York City (Richard H. Field, General Counsel, Carl A. Auerbach, Associate General Counsel, Harry H. Schneider, Chief, Court Review Rent Branch, and Milton H. Shapiro, Attorney, all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MA-GRUDER and McALLISTER, Judges.

McALLISTER, Judge.

Complainant filed a protest against reduction of rentals for apartments in a dwelling house, which was made by the Area Rent Director in Dallas, Texas. The protest was denied, and the complaint before us was subsequently filed.

On March 1, 1942, the date on which maximum rents were established for the Area, complainant landlord had been renting, unfurnished, a seven-room single dwelling house, with detached garage, including servants' quarters, for $50 per month. In 1944, the tenant vacated the premises, and complainant began to remodel the house to provide for two three-room apartments, and to convert the garage into a dwelling unit. When part of the remodeling work was completed, the two above mentioned apartments were rented, in July, 1944, for $75 each per month. It is the rentals of these apartments that is here in issue. The garage unit was rented later in the year and is not involved in this controversy.

Under Section 4(e) of the Rent Regulation for Housing, it is provided that the maximum rents for housing accommodations, not rented at any time during the two months ending on the Maximum Rent Date (or between that date and the effective date), shall be, so far as here pertinent, the first rents for such accommodations after the effective date. But, in cases where the accommodations are so rented for the first time after the Maximum Rent Date, the landlord is obliged to register the accommodations with the Area Rent Office, within thirty days after so renting. The Administrator, under the regulation, may, of course, order a decrease in such maximum rents as provided in Section 5(c) of the regulation, which we shall hereafter consider. However, if the landlord fails to file a proper registration statement within the time specified, "the rent received for any rental period commencing on or after the date of the first renting, or October 1, 1943, whichever is the later, shall be received subject to refund to the tenant of any amount in excess

of the maximum rent which may later be fixed by an order under Section 5(c) (1). Such amount shall be refunded to the tenant within thirty days after the date of the issuance of the order. If the Administrator finds that the landlord was not at fault in failing to file a proper registration statement within the time specified, the order under Section 5(c) (1) may relieve the landlord of the duty to refund. * * *" Section 4(e) (3) of the Rent Regulation for Housing.

Section 5(c) (1) of the regulation provides:

"*Adjustments and other determinations.* —(c) The Administrator at any time, on his own initiative or on the application of the tenant, may order a decrease of the maximum rent otherwise allowable only on the grounds that:

"(1) *Rent higher than the rents generally prevailing.*—The maximum rent for housing accommodations under paragraph (c), (d), (e), (g), or (j) of Section 4 is higher than the rent generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date."

Although the two apartment units here in question were rented for the first time after the effective date of the regulation establishing maximum rents for such housing units in that area, they were not registered within thirty days of such renting, as required by the regulation.

On August 2, 1944, complainant called at the Dallas Defense-Rental Area Office, and after registering certain other property which he owned, he inquired of the area registrar about the units in the house he was remodeling. He stated that the alterations were then being carried on and that the work was not yet completed. But he did not reveal that the two apartment units were, at that time, being rented. Complainant alleges that, upon his statement that the remodeling work was then being carried on, he was told by the area registrar to register the units when the work of alterations was finished. This work was completed on September 1, 1944, at which time the garage was rented; and pursuant to the advice,

which he claims to have received, complainant registered the two three-room apartments and the garage apartment on September 8, 1944.

On May 9, 1945, the Area Rent Director gave notice to complainant of proceedings to decrease the rents which were then being received for the two three-room apartment units, in accordance with Section 5(c) (1) of the Rent Regulation for Housing, on the ground that such rents were higher than the rents generally prevailing in the Area for comparable housing accommodations on the date on which the maximum rents for the area had been established. The notice also set forth that if the landlord had failed to file a registration statement within the time specified in Section 4 of the regulation, that the order which the rent director would issue would be effective to decrease the maximum rent retroactively from the date of the first renting; but that if the landlord was not at fault for failing to register within thirty days after the first renting, he could file documentary evidence to that effect with the Area Rent Director. Complainant answered this notice by letter and therein advised the Area Rent Director that, as heretofore stated, he had been informed that he should register the three apartments when the remodeling work had been completed, and that he felt he should not be penalized for failure to record within the required time. Thereafter, the Area Rent Director entered orders decreasing the maximum rent for each of the two apartment units from $75 per month to $47.50 per month on the ground that the lowered rental was that generally prevailing for comparable accommodations on the date when maximum rents had been established in the area. Furthermore, since complainant had failed to file timely registrations, as required by the regulation, the Area Rent Director provided that the rental reductions were to be made effective as of the dates of the first renting.

Complainant filed applications for review of the orders by the Regional Administration, which were thereafter denied, and he subsequently filed protests against those orders. These protests were directed solely to the portions of the orders which made the decreases in maximum rents effective as of the date of the rentings of the apartments in July 1944, and required refund to the tenants of all excess rent collected by complainant from those dates to the dates of the orders entered by the rent director. The protests were consolidated and complainant was given an opportunity to present further evidence, including data to substantiate his claim that he was not at fault in failing to file the registrations within the required time. Additional evidence was filed by complainant and after further proceedings, the protest was submitted for consideration by a Board of Review. After hearing oral argument by complainant, the majority of the Board of Review submitted its report to the Administrator, recommending that the protest be denied on the ground that complainant had failed to demonstrate that he was not at fault in failing to file timely registration statements. The Administrator thereafter issued an order denying the protest, and the present complaint was accordingly filed.

Complainant does not dispute the Administrator's determination of "comparability" and the fixing of his rents at one-third less than the first rents which he received; and it is admitted that the required registration statements were filed late.

The rigor of the order which was protested by complainant and which here forms the basis of his complaint, arises out of its retroactive nature. Ordinarily, reductions of first rents are only prospective in nature. But where statements of registration are not timely filed, the sting in the order reducing rents lies in the mandate that the excess which has been received by the landlord over the rent as ultimately fixed by the Administrator, shall be refunded to the tenants from the dates of the initial rental.

Complainant contends that he was "not at fault" in failing to file the registrations within the required time, and that, therefore, he is entitled, by virtue of Section 4(e) (3) of the Rent Regulation for Housing, to be relieved of the obligation to make refunds to his tenants of the amount which he had received in excess of the rentals as finally fixed by the Administrator. He as-

serts that his inquiries at the local rent office, together with his reliance upon the information which was given him at the time by the area registrar, were sufficient to overcome any implication of fault on his part. He contends that the registrar owed him an affirmative duty to ascertain by further questioning, during their conversation, whether any of the apartment units in question were currently being rented, and that the advice which was given to him to wait until the alterations were completed before filing any of the registration statements, absolved him from any further duty to disclose additional facts or to inform himself of the express provisions of the regulation. His argument is basically founded upon the theory that he was not negligent in the premises, and, accordingly, was "not at fault" within the meaning of the regulation.

It appears that complainant, at the time of his conversation with the area registrar, had not read the regulations and had no knowledge of the requirement of a timely registration of his premises within thirty days from the date of his first renting of the apartment units. He was thus in no position to determine what facts were pertinent to his inquiry about the requirement of registration, since he had no knowledge of the regulations.

Complainant, according to his affidavit, told the area registrar that he "was converting the dwelling into two apartments and converting the garage on the same lot as the dwelling into an apartment; that the work was then in progress and was not completed." He further stated: "I asked * * * about filing registration information on these three apartments * * * and was told to file registration when the work was completed * * *." On the basis of the facts stated by the complainant, the area registrar was clearly justified in drawing the conclusion that none of the apartments in question was being rented during the time the work of remodeling was being carried on. If this had been the fact, the information and advice which was imparted to complainant would have been correct.

There was no dereliction of duty on the part of the area registrar, or any failure of obligation toward complainant. On the basis of facts revealed, the information given was correct. It can be added that, in our opinion, the situation as disclosed by complainant to the area registrar was affirmatively misstated, although such misstatement may well have been, and very probably was, innocent on the part of complainant. The least that can be said, however, is that if complainant chose to ascertain, by an oral inquiry, what the necessary requirements of registration were, he was bound to make a full disclosure of the facts upon which the rent official was to give an opinion.

Complainant was at fault in not revealing facts which would have qualified or altered the advice given him by the local rent office. Not only was he at fault in not revealing such facts, but the circumstances which he disclosed could give rise only to inferences that the apartment units were not being rented during the time in which the remodeling work was being carried on. This was contrary to the actual facts, and would have required the registration of such units within thirty days of their initial renting. In rulings which we approve, it has been held that a landlord who has filed registration statements late, because he did not know of the filing requirement, although if he had known of it, he could have filed within the prescribed time, failed to demonstrate that he was "not at fault" within the meaning of the regulation. In the Matter of Mrs. Majovski, IV OPA Op. and Dec. (Pike and Fischer) 3323; In the Matter of Mrs. F. E. Roush, IV OPA Op. and Dec. (Pike and Fischer) 3049; In the Matter of Philip Kaplan, IV OPA Op. and Dec. (Pike and Fischer) 3338; In the Matter of Mrs. Pearl W. Eeck, IV OPA Op. and Dec. (Pike and Fischer) 3394.

In view of our determination that complainant was at fault in misstating, or not disclosing fully the circumstances of the situation concerning which he sought and received advice from the area registrar, it is unnecessary to discuss the question of reliance upon oral unofficial opinions of an

administrative officer, as suggested by counsel for complainant.

In accordance with the foregoing, a judgment will be entered dismissing the complaint.