## CREEDON v. BABCOCK.
### No. 5596.

Circuit Court of Appeals, Fourth Circuit.
Aug. 14, 1947.

Nathan Siegel, Sp. Appellate Atty., of Washington, D. C. (Hugo V. Prucha, of Cleveland, Ohio, and Irving M. Gruber, of Washington, D. C., on the brief), for appellant.

Cornelius P. Mundy and Edward A. Smith, both of Baltimore, Md., for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal by the successor to the Price Administrator (hereinafter referred to as OPA) from a judgment of the United States District Court for the District of Maryland, dismissing (except to a limited extent) an action for statutory damages instituted pursuant to Section 205(e) and Section 205(a) of the Emergency Price Control Act of 1942, as amended, (50 U.S.C.A.Appendix § 925(e), (a) (hereinafter referred to as the Act), for alleged violations of the Rent Regulation for Housing, 7 F.R 4902, 8 F.R. 7322, as amended 8 F.R. 9020, 9 F.R. 11335, 10 F.R. 2401 (hereinafter referred to as the Regulation). The principal issue on this appeal was raised when Babcock, defendant and appellee, made a motion to dismiss on the grounds that the statute of limitations barred the suit. The opinion of

the lower court may be found in D.C., 65 F.Supp. 380.

The material facts are not disputed and may be summarized by a brief chronology. Babcock, owner of a basement apartment, changed the apartment from an unfurnished to a furnished apartment, and rented it as a furnished apartment for the first time on December 14, 1943, fixing a new rental of $100 per month. At that time the controlling Regulation provided:

"*Maximum rents.*—Maximum rents (unless and until changed by the Administrator as provided in section 5) shall be:
* * *

(j) *Changed on or after July 1, 1943, or the effective date of regulation, whichever is the later, from unfurnished to furnished.* For housing accomodations changed on or after July 1, 1943, or the effective date of regulation, whichever is the later, from unfurnished to fully furnished, the first rent for such accommodations after such change. The Administrator may order a decrease in the maximum rent as provided in section 5 (c) (1).

Within 30 days after the accommodations are first rented fully furnished, the landlord shall register the accommodations as provided in section 7. If the landlord fails to file a registration statement within the time specified, the rent received from the time of such first renting shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5 (c) (1). In such case, the order under section 5 (c) (1) shall be effective to decrease the maximum rent from the time of such first renting. The foregoing provisions and any refund thereunder do not affect any civil or criminal liability provided by the act for failure to file the registration statement required by section 7." 8 F.R. 9020, 9 F.R. 11336-7.

Instead of registering the premises within 30 days of December 14, 1943, as required by the Regulation quoted, Babcock delayed 10 months before registering on October 14, 1944.

On November 25, 1944, the Area Rent Director, OPA, pursuant to authority contained in Section 5 (c) of the Regulation, reduced the maximum rent for the furnished apartment to $72.50 per month, effective beginning with "the next regular rent payment period."

Shortly thereafter OPA notified Babcock that the order would be modified so as to make the reduction in rent retroactive to December 14, 1943, (the first day the apartment was rented furnished). Babcock did not exercise her right, stated in the Notice, to file objection to this proposed modification. Accordingly, on December 30, 1944, a new order was issued, changing the order of November 25, 1944, by making the effective date of the order relate back to the date the apartment was rented furnished. This order also provided: "All rent received by you since the effective date of this order, in excess of the maximum legal rent established hereby, namely $72.50 per mo., is subject to refund to the tenant. Upon your failure to make such refund within 30 days from the date hereof, the excess payment received will be considered an overcharge within the meaning of Section 205 (e) of the Emergency Price Control Act of 1942, as amended, subjecting you to a damage action in accordance with that section."

Babcock refused to comply with this order of December 30, 1944, directing her to refund the overcharges. The tenant failed to sue and OPA filed a complaint for treble damages. This complaint was filed on September 6, 1945.

Whether there is a statutory limitation barring this suit hinges upon the construction to be given Section 205 (e) of the Act. This Section provides: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the *violation,* except as hereinafter provided, bring an action against the seller on account of the *overcharge.* * * * For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word '*overcharge*' shall mean the

amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the *occurrence* of the *violation* or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same *violation* or *violations*. * * * The amendment made by subsection (b), insofar as it relates to actions by buyers or actions which may be brought by the Administrator only after the buyer has failed to institute an action within thirty days from the occurrence of the violation, shall be applicable only with respect to violations occurring after the date of enactment of this Act. * * *" (Italics added.)

■ It should be noted at the outset that the validity of the order of December 30, 1944, is not before us since that question could not be raised in the court below. Bowles v. Meyers, 4 Cir., 149 F.2d 440; Porter v. Eastern Sugar Associates, 4 Cir., 159 F.2d 299.

■ Failure to register gave no right to sue and therefore does not govern the limitation period. Compare Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605. Until the last day on which refund could be made in compliance with the OPA order, that is, 30 days after the order was issued, or January 30, 1945, there could be no violation. This must be so since a refund payment prior to that date would have been in full compliance with the order and hence would have given no foundation for suit. It follows necessarily from the plain and imperative words of the Act—"within one year from the date of the occurrence of the violation"—that the limitation period started the day following January 30, 1945, which was the date of the occurrence of the violation. The lower court so ruled as to the date of the occurrence of the violation, Bowles v. Babcock, D.C., 65 F.

Supp. 380, 384, and this is in accord with the weight of authority. Porter v. Butts, D.C., 68 F.Supp. 516; Haber v. Garthly, D.C., 67 F.Supp. 774; Porter v. Sandberg, D.C., 69 F.Supp. 29; Parham v. Clark, D.C., 68 F.Supp. 17; Fleming v. Schleicher, D.C., 72 F.Supp. 895. But compare Thompson v. Taylor, D.C., 62 F.Supp. 930.

The court below reasoned further, however, that recovery was limited to the period from September 6, 1944, (one year prior to the date of the complaint) to November 11, 1944, (the date Babcock reduced the rent to $72.50). To limit recovery from September 6, 1944, correlates the limitation period of the Act to the time when the overcharges were received. In other words, by treating the *violation* as synonymous with and the overcharge period coeval. This, we think, is an erroneous construction of the Act.

■ It becomes apparent, upon a close reading of the Act, that the word *violation* is used in a sense that is quite separate and distinct from the word *overcharge*. Particularly significant is the first sentence of Section 205 (e) quoted above: "If any person selling a commodity violates a * * * order * * * prescribing a maximum price * * * the person who buys such commodity * * * may, within one year from the date of the occurrence of the *violation* * * * bring an action against the seller on account of the *overcharge* * * *." *Violation* is used to indicate the point from which the statute begins to run, whereas *overcharge* indicates the basis of, and the yardstick for, damages.

■ Appellee challenges this construction by pointing to the history of the Act. It is quite true that Section 205 (e) provided before amendment, 56 Stat. 33, that suit should be brought within one year after the "rent is paid." That language, of course, favored the defendant in a suit of this sort. Next, the contention is made that there was never any intention on the part of the Congress to tamper with the provisions relating to the limitation period because the legislative committee reports disclose no such intention. See Report of the Senate Committee on Banking and Currency, Sen.Rep. No. 922, 78th Congress, 2d

484

Session, p. 13. The committee reports appear to be entirely silent on this subject. But however persuasive this line of reasoning might be in some situations, it cannot prevail here for it ignores a cardinal rule of statutory construction. There is little or no place for extrinsic aids when a statute employs words that are made plain by the very terms of the statute. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann. Cas.1917B, 1168. Surely such subjective and nebulous conclusions as might arise from the silence of a committee report must yield to the literal but clear words on the face of the statute. Especially is this true when the result thereby reached is practical. We think the language of the Act makes a clear distinction between *violation* and *overcharge*. We conclude, therefore, that none of the claim here involved is barred by the statute of limitations. This conclusion fully accords with the generally established rule that a limitation period begins to run only *after* the accrual of the right to prosecute a claim or cause of action. 34 Am.Jur. (Limitation of Action) § 113. There was no such right here until the "occurrence of the violation," and that, as we have pointed out, did not come into being until Babcock refused to comply with the order of December 30, 1944.

Question has also been raised of the lower court's ruling that Babcock was not liable for treble damages. An amendment to Section 205 (e) of the Act provides that treble damages are not to be assessed "if the defendant *proves* that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation." (Italics ours.) We find nothing in the recitation of facts in the complaint from which it could be said as a matter of law that Babcock was entitled to this so-called "Chandler defense" against treble damages. No evidence was taken below and the case went off on a motion to dismiss. We conclude, therefore, that the lower court was in error in ruling on the question without some kind of hearing. It may be that upon such hearing the facts set forth in the complaint together with

evidence of lack of intent to violate the act and evidence of reasonable care in the premises may justify a finding of defendant's right to relief under the "Chandler defense"; but this is a matter to be determined upon the proofs in the further hearing of the case. It should be noted, also, that whether triple damages are to be assessed is left to the discretion of the trial judge, the language of the statute with regard thereto being "such amount *not more than three times* the amount of the overcharge or the overcharges, upon which the action is based as the court *in its discretion* may determine." (Italics ours.)

The judgment appealed from is reversed and the cause remanded to the District Court for further proceedings, in accordance with this opinion.

Reversed and remanded.