WOODS, HOUSING EXPEDITER, *v.* STONE.

No. 392.   Argued February 4, 1948.—Decided March 15, 1948.

*Stanley M. Silverberg* argued the cause for petitioner. With him on the brief were *Solicitor General Perlman, Irving M. Gruber* and *Ed Dupree.*

*James F. Brennan* argued the cause for respondent. With him on the brief was *Carl M. Weideman.*

*Norma L. Comstock* filed a brief, as *amicus curiae,* urging reversal.

MR. JUSTICE JACKSON delivered the opinion of the Court.

Respondent Stone owned a house in Mooresville, Indiana which he rented to one Locke for $75 per month beginning on or about August 1, 1944. As this was the first rental of the premises, the applicable law [1] and regulations [2] imposed on the owner a duty to file a registration statement within thirty days.

The respondent failed to register the property. He sold it in April 1945 and registration by the new owner brought notice to the Area Rent Director of respondent's prior renting of the property without complying with the registration requirement. On June 28, 1945, the Director, pursuant to the regulations, reduced the rental from $75 to $45 per month, effective from the first rental, and

---

[1] Emergency Price Control Act of 1942, 56 Stat. 23, as amended by Stabilization Extension Act of 1944, 58 Stat. 632, 50 U. S. C. App. (Supp. V, 1946) § 901 *et seq.*

[2] Section 7, Rent Regulations for Housing, 8 Fed. Reg. 14663, 10 Fed. Reg. 3436, providing in part as follows: *"Registration—*(a) *Registration statement.* On or before the date specified in Schedule A of this regulation, or within 30 days after the property is first rented, whichever date is the later, every landlord of housing accommodations rented or offered for rent shall file in triplicate a written statement on the form provided therefor to be known as a registration statement. The statement shall identify each dwelling unit and specify the maximum rent provided by this regulation for such dwelling unit and shall contain such other information as the Administrator shall require. The original shall remain on file with the Administrator and he shall cause one copy to be delivered to the tenant and one copy, stamped to indicate that it is a correct copy of the original, to be returned to the landlord. . . ."

ordered the excess refunded within thirty days thereafter. Respondent failed to refund, the tenant did not sue and this action was instituted by the Price Administrator. The District Court and the Court of Appeals, among other things, held that the one-year statute of limitations ran from the dates of payment of the rentals. 163 F. 2d 393. This conflicted with the holding of the Court of Appeals for the Fourth Circuit which, under similar circumstances, held that the limitation period started upon default in refunding the excess within thirty days after the refund order. *Creedon* v. *Babcock*, 163 F. 2d 480. We granted certiorari limited to this question. 332 U. S. 835.

No question is raised, and none could have been raised in this proceeding, as to the validity of the relevant regulations and the refund order, either on the ground of retroactivity or otherwise, because any challenge to the validity of either would have to go to the Emergency Court of Appeals. 50 U. S. C. App. (Supp. V, 1946) § 924; *Bowles* v. *Willingham*, 321 U. S. 503. See also *Woods* v. *Cloyd W. Miller Co.*, 333 U. S. 138. Taking the legislation, the regulations and the order to be valid exercises of governmental power, as we are thus required to do, the only question before us is when do excessive collections by the landlord begin to enjoy the shelter of the statute of limitations?

Under the system of rent control as established, a landlord is required to register rented accommodations within thirty days after they are first devoted to that use. This brings notice to the control authority that the premises are within its official responsibility and provides data for quick, if tentative, determination as to whether the rental exacted exceeds the level permitted by the policy of Congress set out in the statute.

But when, as in this case, the landlord does not comply with this requirement, there is likelihood that, as hap-

pened here, his transaction will be overlooked for some time or perhaps escape scrutiny entirely. But the landlord is not allowed thus to profit from his own disobedience of the law. If he could keep the excess collections by thus retarding or preventing scrutiny of his contract, he would gain an advantage over all landlords who complied with the Act as well as over tenants whose necessity for shelter is too pressing to admit of bargaining over price. The plan therefore provides that, despite his failure to register, the landlord may continue to collect his unapproved price, but only on condition that it is subject to revision by the public authority and to a refund of anything then found to have been excessive.[3]

---

[3] Section 4, Rent Regulations for Housing, 8 Fed. Reg. 14663, 10 Fed. Reg. 3436, providing in part as follows: *"Maximum rents. . . . (e) First rent after effective date.* For (1) newly constructed housing accommodations without priority rating first rented on or after the effective date of regulation, or (2) housing accommodations changed on or after such effective date so as to result in an increase or decrease of the number of dwelling units in such housing accommodations, or (3) housing accommodations not rented at any time during the two months ending on the maximum rent date nor between that date and the effective date, the first rent for such accommodations after the change or the effective date, as the case may be, but in no event more than the maximum rent provided for such accommodations by any order of the Administrator issued prior to September 22, 1942. Within 30 days after so renting the landlord shall register the accommodations as provided in section 7. The Administrator may order a decrease in the maximum rent as provided in section 5 (c).

"If the landlord fails to file a proper registration statement within the time specified (except where a registration statement was filed prior to October 1, 1943), the rent received for any rental period commencing on or after the date of the first renting or October 1, 1943, whichever is the later, shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5 (c) (1). Such amount shall be refunded to the tenant within 30 days after the date of issuance of the order. . . ."

The plan of the statute and the regulations issued pursuant to it was applied in this case. The landlord failed to register the property. His rental operations escaped notice of the authorities until fortuitously disclosed. He collected as he had a right to do, but subject to readjustment, a rental fixed by himself that was found on inquiry to exceed by 66-2/3% what was fair rental value of the property. He was ordered to refund the excess. He now contends that he can keep all of it that he collected upwards of a year before the action was commenced, upon the ground that the one-year statute of limitations runs,[4] not from the date of his default in obeying the refund order, but from the date of each collection of rental.

We cannot sustain his contention. The statute and regulations made his rentals tentative but not unlawful. Until the contingency of readjustment occurred, the tenant could have had no cause of action for recovery of any part of the rental exacted by the landlord. The cause

---

[4] Section 205 (e) of the Act as amended, 50 U. S. C. App. (Supp. V, 1946) § 925 (e) provides: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. . . . For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be . . . . If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. . . ."

The functions of the Administrator were subsequently transferred to the Housing Expediter who appears as petitioner here.

of action now does not rest upon, and hence cannot date from, mere collection. The duty to refund was created and measured by the refund order and was not breached until that order was disobeyed. It would be unusual, to say the least, if a statutory scheme were to be construed to include a period during which an action could not be commenced as a part of the time within which it would become barred. *United States* v. *Wurts,* 303 U. S. 414. We think no such result was expressed or intended. It was from the violation which occurred when the order was not obeyed within the required time that the statute of limitations commenced to run. *Cf. Rawlings* v. *Ray,* 312 U. S. 96; *Fisher* v. *Whiton,* 317 U. S. 217; *Cope* v. *Anderson,* 331 U. S. 461.

It is now suggested that no cause of action can be based on a refund order, irrespective of its validity. As we have pointed out, the validity of the regulation and order are conclusive upon us here. This cause of action is based upon violation of an "order . . . prescribing a maximum [rent] . . . ." The command to refund cannot be treated as a thing apart, but must be taken in its setting as an integral and necessary part of the order fixing the maximum rent. It was this order that was disobeyed. It would be a strange situation if there were authority to order the landlord to make a refund but no legal obligation on his part to pay it. We think it clear that default in obedience to the requirement of refund gives rise to the cause of action sued upon herein.

It is also suggested that the refund order applies the law to the landlord retroactively. Quite apart from the fact that this is an objection to the order itself rather than to the question of limitation of time, we think the suggestion to be without merit. This is not the case of a new law reaching backwards to make payments illegal that were free of infirmity when made. By legislation

and regulation in force before the collections were made, the landlord's own default in registering had rendered these payments conditional, subject to revision and to refund. Readjustment under these conditions cannot be said to be retroactive law making.

We hold that the one-year statute of limitations began to run on the date that a duty to refund was breached, and on this point only we reverse the judgment of the court below.

*Reversed.*

MR. JUSTICE FRANKFURTER, concurring.

I had supposed that no rule of judicial administration was better settled than that the Court should restrict itself to the questions presented in a petition for certiorari. This is especially true where, as here, the petition was granted but "limited to the question as to the statute of limitations presented by the petition for the writ," 332 U. S. 835, and the case was transferred to the summary docket. The exceptions to this rule are rare, as where the jurisdiction of this Court or of the lower courts is plainly wanting, or where a patent error *in favorem vitae* is to be noted. In any event, it is clear that this case could not be one of them. The exclusive jurisdiction provisions of the Emergency Price Control Act may well preclude our consideration of the validity of the "retroactive order." But since an issue other than that pertaining to the statute of limitations has been dealt with, I would like to add a few words to MR. JUSTICE JACKSON's opinion, inasmuch as his immoderate restraint does not lay bare the "merits" of the controversy.

The crux of the matter is that where a landlord rents new housing accommodations but, as here, disobeys the regulatory scheme and fails to file a registration statement, if he chooses to collect the rent that he himself has

fixed, he can do so only contingently. The Administrator may catch up with him and fix what was the proper amount from the beginning. The excess is illegal and must therefore be refunded.

There is nothing novel about a regulatory scheme whereby landlords who violate the law are denied the right to profit thereby. It has consistently been upheld by the Emergency Court of Appeals. *150 East 47th Street Corp.* v. *Creedon*, 162 F. 2d 206; see *Senderowitz* v. *Clark*, 162 F. 2d 912, 917; cf. *Easley* v. *Fleming*, 159 F. 2d 422. When Congress provided in § 2 (g) of the Act that regulations "may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof," 56 Stat. 23, 27, 50 U. S. C. (Supp. V, 1946) § 902 (g), it plainly authorized effective administrative remedies for dealing with evasion.

If such an order is to be termed "retroactive," it comes within the Court's recent ruling that "such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law." *Securities & Exchange Commission* v. *Chenery Corp.*, 332 U. S. 194, 203.

Mr. Justice Douglas, dissenting.

I think it is plain that a "refund order" is not a maximum rent order since it does more than fix a rent ceiling. I would not stretch a point to call it such, in view of the aversion our law has to the creation of retroactive liabilities. The Court finds fairness in the result because of the special circumstances of the case. Yet it recognizes a cause of action created not by Congress but by those who administer the law. That cause of action is

written into the statute through the addition of retro-active liabilities.

The rent collected by this landlord was the maximum rent which he could at the time lawfully collect. At no time did he collect rent in excess of the ceiling then prevailing.[1] Almost a year later the ceiling was reduced—from $75 a month to $45 a month—and the reduction was made retroactive by a "refund order." The landlord is now sued by the government for treble the amount of the so-called overcharge.

The statute gives a right of action against anyone who collects more than the prescribed maximum price or rent. § 205 (e).[2] No right of action to sue for overcharges prescribed by a "refund order" is contained in § 205 (e) which defines the cause of action and the statute of limitations with which we are presently concerned.[3] The cause of action there described is based on a violation of a maxi-

---

[1] The maximum rent for the type of housing involved here was the first rent after the effective date of the regulations, *viz.*, $75 a month. See Rent Regulation for Housing, § 4 (e) (3), 8 F. R. 14663, 10 F. R. 3436.

[2] Section 205 (e) provides, so far as here material, as follows:

"If any person selling a commodity violates a regulation, order, or price schedule *prescribing a maximum price* . . . the person who buys such commodity . . . may, within one year from the date of the occurrence of the violation, . . . bring an action against the seller on account of the overcharge. . . . For the purposes of this section the payment or receipt of rent . . . shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration *exceeds the applicable maximum price*." (Italics added.)

[3] It may be that the Administrator could sue to compel compliance with the refund order under § 205 (a). See *Porter* v. *Warner Co.*, 328 U. S. 395. There may be other remedies arising from respondent's failure to file a registration statement. Thus § 4 (e) of the Rent Regulations for Housing states: "The foregoing provisions and any refund thereunder do not affect any civil or criminal lia-

mum rent order. The statute of limitations runs "from the date of the occurrence of the violation." It will not do to say that the date of the violation in this situation must relate to the "refund order" because prior thereto there was no violation. Such an interpretation rewrites § 205 (e) and creates a cause of action not only for violating a rent ceiling but also for violating a "refund order." That changes the scheme of the section. The right to obtain a return of money paid normally turns on conditions existing when it was paid. The statute of limitations usually starts to run then and not at some later time. Certainly it is novel law which makes the legality of rent payments turn on the unpredictable future action of an official who in the exercise of his discretion determines that a lower rental should have been paid. Yet the Court has to enter that field of retroactive law in order to make a "refund order" a maximum rent order for the purposes of § 205 (e).

Congress here said in effect that all payments for housing and commodities in excess of the prevailing ceiling were unlawful; and all payments at the ceiling were lawful. The Court in its construction of § 205 (e) does violence to that policy. For it expands the statutory cause of action so as to penalize those who in yesterday's transactions exacted no more than the law and regulations permitted. Any such use of retroactive law to construe § 205 (e) makes it most doubtful that Congress ever adopted the meaning now given the section. I would conclude that Congress had taken that course only if it had said so in unambiguous terms. But one who reads

---

bility provided by the Act for failure to file the registration statement required by section 7." There is no need to canvass those possibilities here as § 205 (e) supplies the only basis for petitioner's judgment in this case.

§ 205 (e) to find any reference to liabilities based on "refund orders" reads in vain. And it is only violations of the orders described in that section which give rise to the cause of action under it.

It is said, however, that no question concerning the validity of the "refund order" can be considered here because any challenge to its validity would have to go to the Emergency Court of Appeals. I do not dispute that view. See *Bowles* v. *Willingham,* 321 U. S. 503; *Yakus* v. *United States,* 321 U. S. 414. For Congress in § 203 and § 204 of the Act provided a special administrative procedure for testing the validity of any provision of a "regulation, order, or price schedule," a procedure the constitutionality of which we have sustained. See *Lockerty* v. *Phillips,* 319 U. S. 182; *Yakus* v. *United States, supra.* But we are not here concerned with the power of the Administrator to issue a "refund order." Our question is different and involves only a question of law turning on the meaning of § 205 (e). What we have to decide is whether a "refund order" is a "regulation, order, or price schedule prescribing a maximum price" within the meaning of § 205 (e). That is the first step in determining the time from which the statutory period of limitations is measured.

In short, the cause of action here at issue can be created only by the statute, not by regulations. The question is not one of validity of the regulations but of statutory interpretation; not an interpretation to determine whether the statute authorizes the regulations, but whether it authorizes the suit.