Tighe E. Woods, Housing Expediter, Appellant, v. Winton L. Murray, Appellee.

Gen. No. 44,244.

Opinion filed December 30, 1948. Released for publication January 18, 1949.

E. D. Dupree, Jr., Hugo V. Prucha, Nathan Siegel, Francis X. Riley, William J. Kaplan and Louis Katz, for appellant.

No appearance for appellee.

Mr. Presiding Justice Sullivan delivered the opinion of the court.

The Price Administrator, predecessor of the Housing Expediter, brought this action against the defendant, Winton L. Murray, under section 205 (e) of the Emergency Price Control Act of 1942 as amended (50 USCA § 925 (e)), on account of defendant's failure to refund excess rents as ordered by the Area Rent Director. Defendant filed a motion to dismiss plaintiff's action on the ground that the period of limitations under said Act began to run from the time the overcharges in rent were collected and not from the time of defendant's failure to make refund pursuant to the refund order. Defendant's motion was allowed and an order was entered dismissing plaintiff's action. Plaintiff's motion to vacate said order of dismissal was denied and this appeal followed. This suit was commenced by Paul A. Porter as Administrator of the Office of Price Administration. It was pursued and this appeal was undertaken by Frank R. Creedon, Housing Expediter, successor to prior administrators of federal rent control. During the pendency of this appeal Tighe E. Woods, Housing Expediter, was substituted as plaintiff in place of Frank R. Creedon. Defendant has not filed a brief in this court.

The gravamen of plaintiff's complaint is that "defendant is the owner, operator, agent, manager or sublessor receiving or entitled to receive rent for housing accommodations rented or offered for rent by him and commonly described as follows: 4520 Calumet Avenue, Chicago, Illinois"; that he reduced certain services to his tenants without an order authorizing such reduction as was required by section 5 (b) (2) of the Rent Regulation; that in due course defendant's unauthorized reduction of services to his tenants came to the attention of the Area Rent Director of Chicago, Illinois; that pursuant to authority delegated to him by the Administrator of the Office of Price Administration, the Area Rent Director on October 26, 1945, issued an order in conformity with section 5 (c) (3)

of said Rent Regulation reducing the rentals in an amount corresponding to the reduction in services; and that this order by its terms was made retroactive to December 1, 1944 and directed the landlord to refund to tenants within 30 days the amounts collected in excess of the amount fixed as the maximum rental from December 1, 1944, from which time the services were reduced without authority. Upon defendant's refusal to comply with this order, this suit was instituted on November 25, 1946 for statutory damages under section 205 (e) of the Emergency Price Control Act.

The aforementioned section 5 (b) (3) of the Rent Regulation provided among other things: "If the landlord . . . decreases the services, furniture, furnishings or equipment without an order authorizing such decrease where such order is required, the rent received by the landlord for any rental period commencing on or after such increase . . . shall be received subject to refund to the tenant in any amount in excess of the maximum rent which may later be fixed decreasing the maximum rent on account of such decrease . . . ." Section 5 (c) of the Rent Regulation declared that the Administrator at any time on his own initiative or on application of the tenant, "may order a decrease of the maximum rent otherwise allowable only on the grounds that: . . . (3) there has been a decrease in the minimum services, furniture, furnishings or equipment required by section 3 since the date or order determining the maximum rent."

Defendant's motion to dismiss the action alleged that it was barred by the one-year Statute of Limitations contained in section 205 (e) of the Emergency Price Control Act as amended, which section is in part as follows:

"If any person selling a commodity violates a regulation, order . . . prescribing a maximum price or

maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge . . . For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order . . . prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period.''

The trial court, after a hearing and consideration of the pleadings and briefs submitted by both parties, filed a written memorandum opinion in which he sustained the motion to dismiss the complaint on the ground that the Statute of Limitations ran from ''the time that the rent was collected as urged by defendant, and not from the time when defendant refused to obey the order to refund as claimed by the Administrator.''

Subsequent to the entry of the order appealed from herein, the Supreme Court of the United States considered and decided the identical question presented to the trial court in this case. In *Woods v. Stone,* 333 U. S. 472, the court said at pp. 473–478:

''Respondent Stone owned a house in Mooresville, Indiana which he rented to one Locke for $75 per month beginning on or about August 1, 1944. As this was the first rental of the premises, the applicable law

and regulations imposed on the owner a duty to file a registration statement within thirty days.

"The respondent failed to register the property. He sold it in April 1945 and registration by the new owner brought notice to the Area Rent Director of respondent's prior renting of the property without complying with the registration requirement. On June 28, 1945, the Director, pursuant to the regulations, reduced the rental from $75 to $45 per month, effective from the first rental, and ordered the excess refunded within thirty days thereafter. Respondent failed to refund, the tenant did not sue and this action was instituted by the Price Administrator. . . .

"No question is raised, and none could have been raised in this proceeding, as to the validity of the relevant regulations and the refund order, either on the ground of retroactivity or otherwise, because any challenge to the validity of either would have to go to the Emergency Court of Appeals. 50 U. S. C. App. (Supp. V, 1946) section 924; *Bowles v. Willingham,* 321 U. S. 503. See also *Woods v. Cloyd W. Miller Co.,* 333 U. S. 138. Taking the legislation, the regulations and the order to be valid exercises of governmental power, as we are thus required to do, the only question before us is when do excessive collections by the landlord begin to enjoy the shelter of the statute of limitations?

"Under the system of rent control as established, a landlord is required to register rented accommodations within thirty days after they are first devoted to that use. This brings notice to the control authority that the premises are within its official responsibility and provides data for quick, if tentative, determination as to whether the rental exacted exceeds the level permitted by the policy of Congress set out in the statute.

"But when, as in this case, the landlord does not comply with this requirement, there is likelihood that, as happened here, his transaction will be overlooked

for some time or perhaps escape scrutiny entirely. But the landlord is not allowed thus to profit from his own disobedience of the law. If he could keep the excess collections by thus retarding or preventing scrutiny of his contract, he would gain an advantage over all landlords who complied with the Act as well as over tenants whose necessity for shelter is too pressing to admit of bargaining over price. The plan therefore provides that, despite his failure to register, the landlord may continue to collect his unapproved price, but only on condition that it is subject to revision by the public authority and to a refund of anything then found to have been excessive.

"The plan of the statute and the regulations issued pursuant to it was applied in this case. The landlord failed to register the property. His rental operations escaped notice of the authorities until fortuitously disclosed. He collected as he had a right to do, but subject to readjustment, a rental fixed by himself that was found on inquiry to exceed by 66⅔% what was fair rental value of the property. He was ordered to refund the excess. He now contends that he can keep all of it that he collected upwards of a year before the action was commenced, upon the ground that the one-year statute of limitations runs, not from the date of his default in obeying the refund order, but from the date of each collection of rental.

"We cannot sustain his contention. The statute and regulations made his rentals tentative but not unlawful. Until the contingency of readjustment occurred, the tenant could have had no cause of action for recovery of any part of the rental exacted by the landlord. The cause of action now does not rest upon, and hence cannot date from, mere collection. The duty to refund was created and measured by the refund order and was not breached until that order was disobeyed. It would be unusual, to say the least, if a statutory scheme were to be construed to include a period during

which an action could not be commenced as a part of the time within which it would become barred. *United States v. Wurts,* 303 U. S. 414. We think no such result was expressed or intended. It was from the violation which occurred when the order was not obeyed within the required time that the statute of limitations commenced to run. *Cf. Rawlings v. Ray,* 312 U. S. 96; *Fisher v. Whiton,* 317 U. S. 217; *Cope v. Anderson,* 331 U. S. 461.

"It is now suggested that no cause of action can be based on a refund order, irrespective of its validity. As we have pointed out, the validity of the regulation and order are conclusive upon us here. This cause of action is based upon violation of an 'order . . . prescribing a maximum [rent] . . . .' The command to refund cannot be treated as a thing apart, but must be taken in its setting as an integral and necessary part of the order fixing the maximum rent. It was this order that was disobeyed. It would be a strange situation if there were authority to order the landlord to make a refund but no legal obligation on his part to pay it. We think it clear that default in obedience to the requirement of refund gives rise to the cause of action sued upon herein.

"It is also suggested that the refund order applies the law to the landlord retroactively. Quite apart from the fact that this is an objection to the order itself rather than to the question of limitation of time, we think the suggestion to be without merit. This is not the case of a new law reaching backwards to make payments illegal that were free of infirmity when made. By legislation and regulation in force before the collections were made, the landlord's own default in registering had rendered these payments conditional, subject to revision and to refund. Readjustment under these conditions cannot be said to be retroactive law making."

The foregoing decision is squarely applicable to the situation presented here and, in accordance therewith, it must be held that the one-year statute of limitations began to run on the date that defendant's duty to refund was breached.

The order of the circuit court of Cook county denying plaintiff's motion to vacate the order dismissing this action is reversed and the cause is remanded with directions that said motion be sustained, that defendant be permitted to file an answer to plaintiff's complaint within a reasonable time, if he sees fit to do so, and that such further proceedings be had as may be necessary and appropriate.

*Reversed and cause remanded with directions.*

FRIEND and SCANLAN, JJ., concur.