JOSEPH GAGLIONE, PLAINTIFF-RESPONDENT, v. FANNIE KATZ AND MORRIS KATZ, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 20, 1950—Decided March 31, 1950.

Before Judges JACOBS, McGEEHAN and EASTWOOD.

*Mr. Charles Fishberg* argued the cause for the appellants (*Messrs. Seufert & Elmore,* attorneys).

*Mr. Sol Hoberman* argued the cause for the respondent.

The opinion of the court was delivered by

JACOBS, S. J. A. D.   The plaintiff instituted action in the Law Division for treble damages alleging rental overcharges .in violation of the Emergency Price Control Act as amended and the Housing and Rent Act of 1947.   Following a verdict by the jury for the plaintiff, judgment was entered in the sum of $990 plus $200 attorney's fee; the defendants appeal .from this judgment.

The plaintiff testified that shortly prior to April 1, 1947, he rented the second floor of the premises located at 159 River Edge Road, Tenafly, and owned by the defendant Morris Katz. He had discussed the matter with the defendant Fannie Katz, the daughter of Morris Katz, and her mother and he was told that there would be "furniture in the house."   Although he signed a receipt for the furniture dated April 1, 1947, he told them that he had his own furniture and received an affirmative reply to his inquiry as to whether it would "be all right to put it in the house."   When he moved in on April 1, 1947, the apartment contained only a table and two chairs which he put in the attic.   However, within a few days a "truck full of furniture" did arrive and was placed on the porch.   It remained there for "some time" and then he "got a truck and brought it back to Mr. Katz's house on County Road."   In accordance with the rental agreement, he paid the sum of $15 per week rental from April 1, 1947, until June 1, 1948.   When he learned that the apartment had been rented unfurnished prior to April 1, 1947, for the sum of $37.50 per month he complained to the defendant Fannie Katz and thereafter instituted his action for treble damages.

The testimony of the defendants was that the rental for the premises unfurnished, as registered with the Office of Price Administration, had been $37.50 per month; that prior to April 1, 1947, Fannie Katz rented the premises unfurnished

from her father and that she, in turn, rented the premises to plaintiff furnished at a rental of $15 per week. Although she did not immediately register this rental she did so at a later date. The records of the Office of Housing Expediter disclose that her registration of the rental of the premises furnished for the sum of $15 per week was filed on May 19, 1948. The Office of Housing Expediter never issued any refund order or took any other action towards decreasing the rental thus registered and apparently no application to that end was ever made by the plaintiff. It is the contention of the defendants that, in the absence of such prior order or action by the Housing Expediter, the plaintiff was not entitled to maintain his action in the Law Division and that their motion for directed verdict (*Cf. Rule* 3:50) was erroneously denied by the lower Court.

We believe that the only reasonable inference to be drawn from the plaintiff's own testimony, as well as the defendants', was that the premises were rented to him as a furnished, rather than an unfurnished, apartment. Although he rejected the tendered furniture and was permitted to use his own, this would not appear to alter the fact that the agreed rental between the parties was on the basis of a furnished apartment. *Cf. Wilkerson v. Montgomery*, 47 *A.* 2d 102, 104 (*Mun. Ct. of App. D. C.* 1946), where the Court said:

"It is true that the ceiling was for furnished quarters, and, according to the record, plaintiff 'had exercised her privilege of bringing into the furnished quarters her own furniture.' The meaning of this statement of the record is not clear, but assuming that the quarters were rented as furnished and plaintiff declined the use of the furniture, we see no violation of the rent ceiling where the tenant for purposes of her own declines a service to which she is entitled."

The rent regulations under the Emergency Price Control Act as amended (10 *F. R.* 13528), in force on April 1, 1947, when the premises were rented to the plaintiff, contained a provision in Section 4 (j) that in cases of housing accommodations which are changed from unfurnished to furnished, the maximum rental shall be the first rent after the change

and that the administrator may order a decrease as provided in Section 5 (c) (1). The same Section provided that the landlord shall register the furnished accommodations within thirty days and that, in the event of his failure to do so, "the rent received from the time of such first renting shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under Section 5 (c) (1)." After the passage of the Housing and Rent Act of 1947 regulations (12 *F. R.* 4325), effective July 1, 1947, were adopted by the Housing Expediter and contained a provision in Section 5 (c) (1) that where a maximum rental had been established under Section 4 (j) of the rent regulations under the Emergency Price Control Act of 1942 as amended and the landlord failed to file timely registration, the rent received "shall be subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under this section."

It seems to us that these provisions governed the leasing to plaintiff in the instant matter. When the premises were rented, as furnished, in April, 1947, the first rental was established at $15 per week, subject to decrease by the administrator as provided in Section 4 (j). Although there was no registration forthwith, there was a registration in May, 1948, which was sufficient although subject to an order of refund which could be issued by the Housing Expediter with retroactive provision. *Cf. 150 East 47th Street Corporation v. Creedon,* 162 *F.* 2d 206, 207 (*Em. Ct. of App.* 1947) ; *Easley v. Fleming,* 159 *F.* 2d 422, 424 (*Em. Ct. of App.* 1947). Under *Woods v. Stone,* 333 *U. S.* 472, 476, 92 ·*L. Ed.* 815, 820 (1948), the plaintiff, as tenant, had no cause of action to recover on the basis of rental overcharges under the statute and regulations until such order of refund had been entered. See also *Creedon v. Babcock,* 163 *F.* 2d 480 (*C. C. A. 4th* 1947) ; *Penner v. Geller,* 193 *Misc.* 821, 87 *N. Y. S.* 2d 249 (*Sup. Ct. App. Term* 1948). In the *Woods case* Mr. Justice Jackson, in discussing a first rental under the regulations, said :

"The statute and regulations made his rentals tentative but not unlawful. Until the contingency of readjustment occurred, the tenant could have had no cause of action for recovery of any part of the rental exacted by the landlord. The cause of action now does not rest upon, and hence cannot date from, mere collection. The duty to refund was created and measured by the refund order and was not breached until that order was disobeyed."

In the present proceeding we are not at liberty to question the validity of the regulations or their effect as determined by the Supreme Court in *Woods v. Stone, supra.* We consider that under the views there expressed, the plaintiff was not entitled to maintain his action in the Law Division without having first exhausted the available administrative procedure and having obtained appropriate refund order or other action adjusting downward the rental established and registered pursuant to the regulations.

The judgment below is reversed.