**SHERWOOD DISTILLING CO. v. RECONSTRUCTION FINANCE CORP.**

No. 6514.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 10, 1952.

Decided Dec. 31, 1952.

Wilson K. Barnes, Baltimore, Md. (William Hoffenberg, Baltimore, Md., on the brief), for appellant.

David R. Owen, Baltimore, Md. (Semmes, Bowen & Semmes, Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and BARKSDALE, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a summary judgment of the United States District Court for the District of Maryland in favor of the Reconstruction Finance Corporation (hereinafter called R. F. C.) in its civil action to recover damages from the Sherwood Distilling Company (hereinafter called Sherwood) for breach of contract. The District Court gave judgment for $36,054.77, representing the principal amount of $35,232.36 claimed by R. F. C. with interest of $822.41. For opinion below, see 107 F.Supp. 873.

During World War II, whiskey distilleries were in large part converted to the production of industrial alcohol for war purposes. This program was administered by Defense Supplies Corporation, a subsidiary of, and later merged with, R. F. C. With occasional exceptions, the entire output ·of the distilleries was purchased by R. F. C. In the case of Sherwood, purchases were made under a series of contracts which commenced in 1943 and ended August 31, 1945, when the then existing contract was terminated in accordance with its terms by R. F. C. because of the cessation of hostilities in Europe. The pertinent contracts were dated January 1, 1944, and July 1, 1944, and although these contracts are complete in themselves, both state that they are amendments to a previous contract dated April 1, 1943.

In brief, these contracts provided that R. F. C. would purchase from Sherwood its entire production of industrial alcohol and would pay therefor the maximum price allowed by the Office of Price Administration (hereinafter called O. P. A.) Paragraph 2 of the contracts provided:

"The purchase price for alcohol meeting specifications shall be the maximum price for distiller's alcohol determined in accordance with appropriate regulations of the Office of Price Administration."

By means of this objective standard of price determination, a standard which was in common use throughout the war in commercial contracts generally, R. F. C. made it possible for Sherwood to receive the maximum price allowed by law.

It was recognized, however, that this method of price determination required allowances for the delays incident to a final O. P. A. determination, which was made for each distiller individually on the basis of its production costs. If Sherwood were forced to wait for payment, its working capital would be seriously impaired, if not exhausted. Accordingly, a system was devised whereby R. F. C. would pay Sher-

wood, immediately upon receipt of the alcohol, a pro forma price per gallon. This price was to be fixed by Sherwood in accordance with its own estimate of what its costs would be and, therefore, of what the final O. P. A. price would be.

On October 9, 1943, Sherwood submitted to O. P. A. and R. F. C. an estimate (Price Notice) which fixed this pro forma price at $1.10 per gallon, "subject to upward or downward adjustment" by O. P. A. in determining the final maximum price. Thereafter, and throughout the entire period involved in this suit, R. F. C. promptly paid Sherwood $1.10 for each gallon of alcohol delivered.

During the second quarter of 1944 (the contract of January 1, 1944, being in effect), a further refinement of the system of pro forma payments was developed. As required by O. P. A. regulations, Sherwood was then submitting to O. P. A., after the end of each quarter, written reports of its costs of production, for use by O. P. A. in determining the final maximum prices. These "Cost Reports" indicated that a maximum price higher than $1.10 might be called for. Accordingly, for that quarter R. F. C. voluntarily made an additional payment to Sherwood based upon Sherwood's Cost Report of $1.2367 per gallon, subject to being increased or decreased by O. P. A. in fixing the final maximum price.

Apparently this arrangement was satisfactory to both parties, since it was specifically provided for in Paragraph 2 of the new contract dated July 1, 1944, covering the period from July 1, 1944, to August 31, 1945:

"Pending determination of the appropriate maximum price, D. S. C. (R. F. C.) will make pro forma payments as provided in Section 6 hereof in an amount determined from time to time by the D. S. C. (R. F. C.) to approximate the estimated final price; and preliminary adjustments in the pro forma payments may be made on the basis of the producer's reports of costs to the O. P. A., *and on the basis of the O. P. A.'s audits of the producer's costs.*" (Italics supplied.)

Furthermore, the applicable O. P. A. regulation established the formula for computing the maximum prices for ethyl alcohol. Maximum Price Regulation 28, § 1412.263, Appendix A(h) 3 provided:

"Maximum prices computed pursuant to the formula contained in subparagraph (1) shall be determined for the ethyl alcohol produced during each calendar quarterly period and shall be based upon the actual costs of producing such ethyl alcohol. (1) Until the actual costs for a quarterly period are determined, the price shall be an estimated price. (2) Within twenty days after the end of each calendar quarterly period, each seller computing a maximum price pursuant to the formula contained in subparagraph (1) shall submit to the Office of Price Administration, Washington, D. C., upon a form to be obtained from that Office upon request, a report of the actual costs of producing the ethyl alcohol sold to the Defense Supplies Corporation during such period. The estimated price shall be adjusted upward or downward in accordance with the report of actual costs filed with the Office of Price Administration. (3) A maximum price so determined shall be subject to disapproval in writing at any time by the Office of Price Administration, and if a maximum price reported pursuant to this paragraph is revised downward by the Office of Price Administration and if any payment has been made at a price higher than the price approved by the Office of Price Administration, the seller shall refund the excess."

The development of this system of pro forma payments in no way affected the fundamental provision of Paragraph 2 of the contracts that the final purchase price would be the maximum price allowed by O. P. A. This price was not finally determined until O. P. A. set the maximum price which Sherwood could charge for alcohol sold to R. F. C. These final price determinations were promulgated by Letter Orders issued pursuant to the Emergency Price Control Act of 1942, as amended, 50

U.S.C.A. Appendix, § 902 et seq. and O. P. A. Regulations, and were addressed to Sherwood. In every instance, the maximum prices fixed by O. P. A., after making its audit, were lower than those reported by Sherwood. Both the price notices and the contracts themselves recognized that the O. P. A. prices might be less than the pro forma prices submitted by Sherwood, in which event Sherwood agreed to submit promptly supplementary payment. Such payment was to be made by a credit memorandum to the extent of any amounts which R. F. C. might then owe Sherwood for recent shipments of alcohol, and the balance in cash.

Sherwood requested numerous extensions of time within which to make the refunds due under this arrangement, but when large amounts became much overdue and Sherwood still refused to pay, R. F. C. instituted the present civil action on August 2, 1947. About two months later, Sherwood filed with the Director, Division of Liquidation, Department of Commerce (successor to O. P. A.) a protest against all of O. P. A.'s orders in the present case. This administrative proceeding was in progress for almost four years. On August 22, 1951, the Emergency Court of Appeals rendered its final decision granting in part and denying in part Sherwood's claim for price relief. See Sherwood Distilling Company v. Ryan, 190 F.2d 314. No petition for writ of certiorari was filed by Sherwood, and this judgment has become final. On October 24, 1951, the Department of Commerce issued a revised final order and opinion effectuating the decision of the Emergency Court of Appeals. Thereupon, R. F. C. filed a supplemental complaint containing a revised statement of account based upon this final order and moved for summary judgment thereon.

■■ Sherwood's answer in the instant case is based in part upon the contention that the various O. P. A. pricing orders in controversy are invalid and should be so declared by this Court. It has been repeatedly held that jurisdiction to determine the validity of O. P. A. regulations and orders rests exclusively with the Emergency Court of Appeals and the Supreme Court.

Woods v. Stone, 333 U.S. 472, 68 S.Ct. 624, 92 L.Ed. 815; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Meyers, 4 Cir., 149 F.2d 440. Seeking to avoid the effect of these decisions, Sherwood contends that the District Court was not deprived of its jurisdiction by Section 204 (d) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 924(d), because the exclusive jurisdiction there granted to the Emergency Court of Appeals was limited "to determine the validity of any regulation or order issued under Section 2", while the regulations and orders in the pending controversy were issued under Section 201 of the Act, 50 U.S.C.A.Appendix, § 921(d).

Were it necessary for us to pass upon the validity of this position, we would feel justified in relying upon our decision in Porter v. Eastern Sugar Associates, 4 Cir., 159 F.2d 299, where a similar contention was urged before this Court and rejected. See Porter v. Eastern Sugar Associates, 159 F.2d at page 301. It is clear, however, that no such determination is here required. Subsequent to the filing of the original complaint in this case, Sherwood chose to avail itself of the administrative remedy provided in the Act by filing a protest to the O. P. A. orders and invoking the aid of the Emergency Court of Appeals.

■ In this proceeding, Sherwood raised the same numerous questions of law which it now attempts to re-assert and was amply heard thereon. Obviously, Sherwood has been awarded its full measure of appropriate relief in regard to the validity of the O. P. A. pricing orders and regulations. Having had its day in the Emergency Court of Appeals, Sherwood is not entitled to relitigate in this forum the issues there decided. It follows, therefore, that no question of cost accounting in connection with the fixing of maximum prices by O. P. A. is properly before this Court.

■ Finally in this connection, Sherwood alleges that the O. P. A. auditor in this case deliberately and improperly rejected certain items of legitimate cost with the intention of securing later employment

with Sherwood as a consultant to adjust the matter in its behalf. According to Sherwood, the O. P. A. and its successor, the Division of Liquidation, adopted the reports of the auditor and based its pricing orders upon them. In view of the fact that exhaustive review was made of the cost accounting aspect of this case in the Emergency Court of Appeals, the contention is immaterial. The final opinion of the Emergency Court specified in considerable detail the proper allowable costs and is dispositive of this issue for the reasons already given.

■ Sherwood's answer admits the making of the contracts, the quantities of alcohol delivered, the amounts of R. F. C.'s payments therefor, and Sherwood's refusal to make refunds. Although it denies their validity, the answer also admits the issuance of the various O. P. A. orders and regulations. In view of these admissions, we think it is evident that this case presents the single question of the proper method for determining the prices to be paid for the industrial alcohol sold to R. F. C. The answer to this question requires the interpretation of the pertinent provisions of the contracts, which is a matter of law wholly within the province of the Court.

■ On this issue, it is Sherwood's position that the proper method for determining the applicable prices involves a two-step procedure: (1) the establishment of a pro forma or estimated price, contained in the Price Notice, to be paid by R. F. C. immediately upon delivery of the individual shipments of alcohol, and (2) a revision of this pro forma price on the basis of Sherwood's calculation of its production costs for a quarterly period (Costs Report), to establish the final contract price. Sherwood strenuously urges that the contracts in question are "cost-plus" contracts, and that so long as Sherwood's figures represent the actual costs of production plus the agreed profit of $.04 per gallon allowed by Maximum Price Regulation 28, there has been no violation of the terms of the contracts.

While not denying the propriety of the two steps mentioned above, R. F. C. contends that the pricing process agreed upon by the parties actually involves an additional or third step. This third or ultimate step contemplates the fixing of a maximum price by O. P. A. based upon its audit of Sherwood's costs figures. Thus it is R. F. C.'s position that as "cost-plus" contracts, the purchase price is predicated not solely upon the costs claimed by Sherwood, but also upon the costs allowed by O. P. A. following its audit.

When the pertinent provisions of the applicable regulations and the contracts are read together, it is clear that R. F. C.'s interpretation is correct. The regulation listed the types of costs which would be allowed (e. g., materials, direct labor, plant overhead, etc.) and specified the profit which would be allowed. Sherwood's costs reports were required to follow this formula, but the prices so established were stated in the regulation to be "subject to disapproval in writing at any time" by O. P. A. Both R. F. C. and Sherwood realized from the beginning that the final O. P. A. price would not necessarily be higher than the pro forma price of $1.10. The Price Notice itself, signed by Sherwood, makes this clear. Over Sherwood's signature appears the statement that the price of $1.10 is "Subject to upward or downward adjustment" by O. P. A. Elsewhere on the paper there are two separate references to a "downward adjustment" and two references to a "decrease in price." In order to provide for an adjustment of the parties' rights in the event the O. P. A. price was less than $1.10 (i. e., less than what R. F. C. had paid pro forma) the Price Notice specifically stated:

"If price is decreased, submit check to D. S. C. (R. F. C.) agent together with summary invoice."

In addition, the very terms of the contracts themselves stipulated that the purchase price of the alcohol should be the maximum price allowed by O. P. A. and that O. P. A. should have the right to audit Sherwood's cost reports to determine the appropriate maximum price. Without this right of audit, O. P. A.'s sole function

would have been to adjust the pro forma prices in accordance with Sherwood's production figures, the effect being tantamount to a complete abnegation on the part of O. P. A. of any right to fix maximum prices other than those submitted by Sherwood. Notwithstanding, Sherwood's interpretation of the contracts eliminates the vital third step by which provision is made for the determination of maximum prices by O. P. A. based on its audit. Such a construction is not only erroneous on its face, but completely disregards the specific language of the contracts and the regulations.

■ We conclude that in its present posture, involving no aspect of the validity of the various O. P. A. pricing orders, this litigation presents no genuine issue of material fact and is properly susceptible of disposition by summary judgment. Fed. Rules Civ.Proc., 28 U.S.C.A. Rule 56(c); International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013; Reconstruction Finance Corporation v. Foust Distilling Co., D.C.M.D.Pa., 103 F.Supp. 167. See also Simpson Bros. v. District of Columbia, 85 U.S.App.D.C. 275, 179 F.2d 430; Durfee & Canning v. Socony Vacuum Oil Co., D.C. D.Mass., 94 F.Supp. 936.

Nor does the fact that Sherwood filed a counterclaim in this case alter our conclusion. In substance, the counterclaim seeks to recover from R. F. C. the difference between the maximum prices allowed by O. P. A. or the pro forma prices paid by R. F. C. and the actual prices claimed by Sherwood. It is evident that the counterclaim is nothing more than a manifestation, in the form of a demand for damages, of Sherwood's theory of the case; which, as we have said, is based upon an erroneous interpretation of the contracts in question. As such, it raises no issue of material fact which precludes the entry of summary judgment. Accordingly, the judgment of the District Court is affirmed.

Affirmed.