Ben Zaker and Agnes R. Zaker, Appellants, v. John Lapa and Estelle Lapa, Appellees.

Gen. No. 43,822.

Opinion filed November 13, 1947. Released for publication December 13, 1947.

JOHN P. BURITA, of Chicago, for appellants.

MAURICE H. RUTTENBERG, of Chicago, for appellees.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This action at law was instituted by plaintiffs, Ben Zaker and Agnes R. Zaker, against defendants, John Lapa and Estelle Lapa, under section 205 (e) of the Emergency Price Control Act of 1942, as amended and also under said section of that Act as it was amended by section 108 (b) of the Stabilization Extension Act of 1944, to recover damages because of alleged over-ceiling rent charges claimed to have been made by defendants as landlords and received by them from plaintiffs as their tenants. The case was tried by the court without a jury. The issues were found in favor of defendants and judgment entered against plaintiffs for costs. Plaintiffs appeal.

The gravamen of plaintiffs' complaint was that one Frank Hoffman and his wife, the former owners of the premises in question, received $25 a month rent

for the second floor apartment therein on March 1, 1942, the maximum rent date, and that since defendants, who purchased the property from the Hoffmans, rented said apartment to plaintiffs for $45 a month and received that amount from them for 35 consecutive months, ending June 4, 1945, there was an overcharge of $20 a month during that period or $700; and that they were entitled to recover from defendants treble the amount of such overcharges or $2,100 and reasonable attorney's fees and costs.

Section 205 (e) of the Emergency Price Control Act of 1942, which went into effect July 1, 1942, provides in part as follows:

"(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or *for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater,* plus reasonable attorney's fees and costs as determined by the Court. *For the purpose of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be. . . . Any suit or action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid.*" (Italics ours.)

Section 108 (b) of the Stabilization Extension Act of 1944, which went into effect July 1, 1944, in so far as it is pertinent to this proceeding, provides as follows:

"(e) If any person selling a commodity violates a regulation, order or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year

from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, *That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilful nor the result of failure to take practical precautions against the occurrence of the violation.* For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price." (Italics ours.)

Pursuant to authority granted him by the Emergency Price Control Act of 1942, the Administrator of the Office of Price Administration issued a declaration establishing March 1, 1942, as the maximum rent date and promulgated rent regulations for the Chicago Defense Rental Area, section 4 (a) and (c) thereof providing as follows:

"(a) Rented on maximum rent date. For housing accommodations rented on the maximum rent date, the rent for such accommodations on that date.

"(c) First rent after the maximum rent date but before effective date. For housing accommodations not rented on the maximum rent date nor during the two months ending on that date, but rented prior to the effective date of regulation, the first rent for such

accommodations after the maximum rent date. The Administrator may order a decrease in the maximum rent as provided in Section 5(c)."

On and prior to March 1, 1942, Frank Hoffman and Anna Hoffman owned a two story building, consisting of two four room apartments. The Hoffmans occupied the first floor apartment and their daughter and her husband lived in the second floor apartment on said date. The defendants purchased the property from the Hoffmans in April 1942, and the deal was closed on May 22, 1942. When defendants secured possession of the building on May 22, 1942, it was vacant. On June 2, 1942, defendants rented the second floor apartment to plaintiffs at a monthly rental of $45. It is undisputed that plaintiffs paid defendants $45 a month rent for 35 consecutive months, ending June 4, 1945.

On October 26, 1942, defendants filed a rental registration in the Chicago Defense Area Rental Office (hereinafter for convenience referred to as the Rental Office) as to the second floor apartment, in which they reported that it was owner occupied on March 1, 1942, that it was owner occupied between January 1, 1942 and March 1, 1942, that it was first rented thereafter on June 2, 1942, for $45 a month and that the maximum legal rent was therefore $45 a month.

About April 15, 1945, Anna Hoffman, who with her husband consummated the sale of the property to defendants on May 22, 1942, filed a rental registration in the Rental Office as to said second floor apartment, in which she reported that it was rented for $25 a month on March 1, 1942, that the rent on the maximum rent date (March 1, 1942) was $25 a month and that the tenant on said date was Edward Jagow (her son-in-law). The Hoffman rental registration was stamped "Amended Registration" by the Rent Director and presumably at the time it was filed or shortly thereafter the rental registration filed by defendants on October 26, 1942, was stamped by the Rent Director

as follows: "Void—must be registered again. Return this form with your new registration." According to defendants, they were not notified that their rental registration had been voided and they did not file a "new registration."

On April 25, 1945, plaintiffs' attorney wrote a letter to defendants, which is in part as follows:

"The Defense Rental Area office of the O.P.A. Enforcement division advised me today that their investigation is completed and that you have amended your registration of this apartment to show the ceiling rent as $25.00 a month, not $45.00 as originally registered.

"It is apparent that you have been overcharging the Zakers $20.00 a month, since June 1942, and I hereby make demand, before suit, for treble damages ($60.00 a month) and their attorney's fees; said damages being provided for by Federal Statutes and O.P.A. regulations covering a situation of this kind."

It will be noted that this letter contains the statement that defendants had amended their registration to show "the ceiling rent as $25.00 a month, not $45.00 as originally registered." As has been shown, it was in the rental registration filed by Anna Hoffman about April 15, 1945, that the ceiling rent or the rent on March 1, 1942, was asserted to be $25 a month. Plaintiffs' attorney admitted upon the trial that he was mistaken in making the aforesaid statement in his letter but advised the court that the misstatement was made unintentionally.

Upon defendants' receipt of the foregoing letter they employed an attorney, who, instead of contesting before the Rent Director the rental registration filed by Anna Hoffman, prepared and had the defendant, John Lapa, sign a "Landlord's Petition for Adjustment of Rent for Housing Accommodations." This petition, which was filed in the Rental Office on May 1, 1945, recited in part that Lapa was the landlord of the housing accommodations involved herein, that plaintiffs were

his tenants, that the "Maximum Rent" was $25 a month and that the "Rent now received was $45 per month. It was requested in said petition that the rent be adjusted to $55 a month because of major capital improvements made on the premises by defendants. On November 21, 1945, the Rent Director acted on Lapa's petition and issued an order that "the maximum rent for the above described accommodations be, and it hereby is, changed from $25 per month to $40 per month, with major capital improvement and garage." This order became effective as of the date of its issuance and was noted on the rental registration filed by Anna Hoffman. The rental registration filed by John Lapa on October 16, 1942, the rental registration filed by Anna Hoffman about April 15, 1945, John Lapa's "Landlord's Petition for Adjustment of Rent for Housing Accommodations" filed May 1, 1945 and the Rent Director's order of November 21, 1945, changing the rent from $25 to $40 a month as of that date were received in evidence by stipulation as part of the official records of the Chicago Defense Rental Area Office.

Frank Hoffman testified in plaintiffs' behalf that he and his wife formerly owned the property in question; that he and his family occupied the first floor apartment and his married daughter and her husband lived in the second floor apartment; and that on and prior to March 1, 1942, they paid him $25 a month rent for said apartment. His wife, Anna Hoffman, was not called as a witness but he identified her signature on the rental registration filed by her in the Rental Office about April 15, 1945. According to Hoffman, he did not know at whose instance his wife signed the rental registration which was stamped "Amended Registration" by the Rent Director. Hoffman testified on cross-examination that he had no recollection of ever having told the defendants that his daughter and her husband paid him $25 a month rent for the apartment.

The defendant, John Lapa, testified that when he and his wife purchased the property from the Hoffmans, he knew that their daughter and her husband lived in the second floor apartment; that when they were closing the deal on May 22, 1942, John Gawin of the building and loan association asked Hoffman how much rent he received from the property and Hoffman said, "I never charged any rent with my daughter in there"; that Hoffman told him (Lapa) that "he never collected any rent, because his daughter was living there, and they were living as one unit . . . he did not charge any rent to his daughter, they were living as one family, and that is the same way they are living to this day."

John Gawin testified that he was secretary of the Concord Savings and Loan Association and was present when the deal was consummated for the purchase of the property by defendants; that "the Association was interested in making a mortgage there, and I delivered a check over there and at the same time checked over the whole transaction"; that he inquired of Hoffman if there were "any rents" and Hoffman said, "We occupy the whole building . . . one is upstairs and one is downstairs and in the basement and all over; it is one family, and we don't collect any rents."

The defendant, Estelle Lapa, testified that at the time the deal was closed Hoffman told Gawin there was no rent collected from his daughter and her husband for the second floor apartment and that "it was a family unit"; that she did not know anything about rent regulations either at the time she and her husband purchased the property in April 1942, or when the deal was closed on May 22, 1942; that plaintiffs rented and moved into the second floor apartment in the early part of June 1942; that in July or August, 1942, she learned from the newspapers for the first time that it was necessary to file a rental registration; and that

she then went to the Chicago Defense Rental Area Office, where she was directed to consult a clerk for assistance in filling out the form she was required to file. Mrs. Lapa testified further as follows: "I asked this woman . . . in order to fill this form . . . what I should do in that line where the ceiling price of March 1st is asked, which I don't know. The first thing she asked me, if I collected any rent from the tenants; I says at the time we came in we had no tenants there, the building was empty . . . she asked me what I am collecting now, and I said it was $45.00; and she wanted to know what was included in the price, and of course I told her the heating and decorating and furnishing water and things, necessary repairs that go in with the flat. So she asked me again if I had any knowledge of what the rent was; I says no; so she says, 'Well, the only thing you can do is govern yourself more or less by the area there' what the rentals are collected in that area and from where I arrived at that is while we were looking for a home, we were looking for a flat, and the place where we moved was a place where there was no heat and the flat was $40.00; so we thought $45.00, inasmuch as we took the gas over and the heating of the water and all the decorating and our taxes were running pretty high, so we thought that was a fair judgment for us."

It appeared that sometime after plaintiffs rented the apartment they complained to defendants that they were being charged too much rent; that other complaints followed and the parties became very unfriendly; that no proper steps were ever taken by plaintiffs to have the rent reduced by the Rent Director; that in February, 1945, defendants brought a forcible detainer action against plaintiffs and that the latter successfully defended that suit; and that while said suit was pending, Mrs. Hoffman was procured by some undisclosed person to file the rental registration in April, 1945, in which she stated that on March 1,

1942, the second floor apartment was rented to her son-in-law for $25 a month rent.

The judgment order appealed from, including special findings of the trial court, is as follows:

"1. That on March 1, 1942 the entire premises in question consisting of two apartments . . . , commonly known and described as 2336 South 61st Court, Cicero, Illinois, were occupied by the then owners, Frank and Anna Hoffman and their family.

"2. That the registration of the second apartment filed by the defendant, John Lapa, with the Office of Price Administration as document No. 251009 on the 26th day of October 1942 was correct.

"3. The court further finds that the prevailing rental for accommodations of the type so registered by the defendant, John Lapa, were valued at $45.00 per month on March 1, 1942 in the community in which said accommodations were located.

"4. The court further finds that the O.P.A. Form commonly known as D1 filed with the O.P.A. under docket No. 1–34077 purporting to be the petition of John Lapa for adjustment of rent was filed in error and is not to be construed in any manner against the said defendants in the above entitled cause.

"5. The court further finds that the plaintiffs, Ben Zaker and Agnes R. Zaker have failed to show a good cause of action against the defendants in the above entitled cause. Therefore, for the reasons hereinabove set out, the court finds the issues in favor of the defendant and dismisses the plaintiff's complaint at plaintiff's costs and further orders that execution issue in favor of the defendants for their costs, sustained by them in the above entitled cause."

Plaintiffs first contend that the trial court erred in entering judgment on the foregoing special findings, since such findings were in conflict with the records, findings and orders of the Office of Price Administration and its Rent Director of the Chicago Defense

Rental Area Office. This contention is a meritorious one.

The special findings of the trial judge were undoubtedly predicated on what he considered the obvious equities of the case. However, in making these findings the trial judge ignored and disregarded the records, findings and orders of the Office of Price Administration and its Rent Director, which constituted the only competent evidence in the record on the question as to whether defendants overcharged plaintiffs $20 a month for 35 months.

As has been seen, the rental registration, which was filed by defendants on October 26, 1942, and stated that the "maximum legal rent" was $45 a month, was thereafter voided, when Anna Hoffman filed her rental registration about the middle of April 1945, which was accepted by the Rent Director as an amended registration, establishing the ceiling rent as $25 a month. On November 21, 1945, the Rent Director, acting on defendants' petition for an adjustment of rent, ordered that the maximum rent be changed from $25 per month to $40 per month. It will be noted that this order of the Rent Director recognized that the ceiling rent was $25 a month prior to the date said order was entered. Defendants' rental registration, in which the maximum rent was stated to be $45 per month, having been voided, must be considered as if it had never been filed, in so far as the instant contention is concerned. The records of the Rent Director show conclusively that he found that the ceiling rent was $25 a month for the 35 months involved herein and the trial judge had no jurisdiction to find otherwise, even though he may have been convinced that the statements made by Anna Hoffman in her rental registration were untrue or that the Rent Director's finding in respect thereto was highly inequitable. Therefore the trial court erred in not finding that defendants overcharged plaintiffs $20 a month rent for 35 months.

It has been repeatedly held that a Rent Director in a defense rental area acting as agent of the Price Administrator has exclusive jurisdiction to determine the maximum legal rent that may be charged for housing accommodations and that a State court has no jurisdiction to do anything other than enforce the ceiling rent as fixed by the Rent Director. (*Thompson v. Taylor*, 60 F. Supp. 395; *Henderson v. Kimmel*, 47 F. Supp. 635; *Bowles v. Willingham*, 321 U. S. 503; *Berndt et al. v. Shaw*, C. C. H. 1 *Price Control Cases*, 51719 and *People ex rel. Weber v. D'Esposito*, 45 N. Y. S. 2d 865.)

The next question presented is the amount of damages plaintiffs are entitled to recover. In determining this question it is necessary to consider separately the overcharges made for the first 24 months and those made for the remaining 11 months. The overcharges for the first 24 months occurred more than one year before plaintiffs filed their complaint herein and defendants insist that plaintiffs' claim as to such overcharges was barred by the one year limitation provision of section 205 (e) of the Emergency Price Control Act of 1942, heretofore set forth.

However, it is contended by plaintiffs that "the twenty four previous overcharges were not barred by the aforesaid limitation provisions because the defendants fraudulently concealed from the plaintiffs and the United States Government or an agency thereof, the fact that they had a right of action against them." This contention is based on section 22 of the Limitations Act (par. 23, ch. 83, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 107.282]), which provides as follows:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

■ ■ While the records, findings and orders of the Rent Director were conclusive as to the over-charges having been made, they were not conclusive on the question as to whether defendants acted in good faith, when they charged and collected $45 a month rent from plaintiffs. The testimony of the witnesses, heretofore set forth, was also competent and material evidence on this question.

It will be recalled that defendants testified that at the time the deal was closed Hoffman stated that his daughter and her husband did not pay him any rent for the second floor apartment and that the entire building was occupied as a family unit. The disinterested witness, Gawin, corroborated their testimony in this respect. Hoffman did not deny that he made this statement at the time the deal was closed.

Before the rental registration was signed and filed by Lapa three or four months after the deal was closed, his wife went to the Rental Office, where she made a frank disclosure of the facts as she knew them concerning the apartment. She then inquired how the registration form should be filled out and what rent might be charged for the apartment. She was advised by the person she consulted in the Rental Office that she was entitled to charge the prevailing rent in the neighborhood for similar housing accommodations. It was as a result of such advice that defendants' rental registration contained the statement that the apartment was owner occupied on March 1, 1942, and that the maximum legal rent was $45 a month. It was undisputed upon the trial that $45 a month was the prevailing rent for similar housing accommodations in the neighborhood, when plaintiffs became defendants' tenants in June of 1942.

The Rent Director made no finding as to the truth of the statement in the rental registration of Anna Hoffman that the apartment was rented on March 1, 1942, to her son-in-law for $25 a month. He merely

accepted such statement as being prima facie correct and left the matter open so that defendants might contest said registration by filing a new registration of their own. Defendants did not file a new registration because they received no notice of the filing of the Hoffman registration.

It is significant that, although plaintiffs might have readily located the Hoffmans, the rental registration of Anna Hoffman was not filed until more than two and one-half years after defendants' registration was filed and it is also significant that she was not produced as a witness but that her husband, who had nothing to do with the registration filed by her, was called as a witness in plaintiffs' behalf. It is true that Hoffman testified that his daughter and her husband paid him $25 a month rent for the apartment on March 1, 1942, but it is also true that the trial judge characterized his testimony in this regard as being unworthy of belief. This being so, the statement in Anna Hoffman's rental registration that her son-in-law paid $25 a month rent for the apartment on March 1, 1942, is entitled to no greater credence than the testimony of her husband to the same effect.

Plaintiffs' attorney attempted to impeach Lapa by showing that the following statement appeared over his signature in his petition for adjustment of rent, filed May 1, 1945: "At the time of taking possession the building was vacated by the owner and his daughter and son-in-law. When I inquired as to the rent paid I was then informed by Hoffman that they had given the upper flat to their daughter at a very nominal rent, because the son-in-law did all the decorating and out-side painting and all necessary work in and around the house." Lapa testified that this statement was not true, that his then attorney prepared the petition for adjustment of rent without consulting him as to the contents thereof and that he signed the petition without reading it.

It is well to recall the circumstances under which defendants' petition for adjustment of rent was filed. A few days prior to the filing of said petition, they had received the letter from plaintiffs' attorney threatening to sue them for "treble damages ($60.00 a month)" for overcharging plaintiffs $20 a month on their rent. According to defendants, this was the first notice they had from any source that the ceiling rent was less than that shown in their rental registration. They were undoubtedly bewildered and confused by such notice and employed an attorney. This attorney was apparently more confused than they were as to the proper course to pursue before the Rent Director. Instead of contesting the Hoffman rental registration, as he should have done, defendants' attorney prepared and filed the petition for adjustment of rent. This petition was, to say the least, inadvertently filed and even though its contents be considered in their aspect most unfavorable to defendants, it cannot be said that there is anything contained therein that supports plaintiffs' contention that defendants fraudulently concealed from them the correct ceiling rent.

In deciding this case, the trial judge stated that he believed the testimony of defendants and their disinterested witness, Gawin, and that defendants "are simple people" who "haven't any desire to defraud anyone nor to violate the law in any way."

The burden was on plaintiffs to prove that defendants fraudulently concealed from them the correct ceiling rent and, in our opinion, they failed to meet that burden. Since there was no fraudulent concealment shown, recovery on the first 24 overcharges must be held to have been barred by the one year limitation provision of section 205 (e) of the Emergency Price Control Act.

This brings us to the consideration of the other 11 overcharges, which occurred within one year of the commencement of this action. Section 108 (b) of the

Stabilization Extension Act, which went into effect July 1, 1944, governs as to the amount of damages plaintiffs may recover for these 11 overcharges. The maximum amount of damages recoverable under said section is three times the amount of each overcharge and the minimum amount is $25 for each overcharge and the statute provides that plaintiffs are only entitled to recover the latter amount, "if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilful nor the result of failure to take practical precautions against the occurrence of the violation."

From what has already been said, it clearly appears that defendants did not wilfully charge plaintiffs more than the maximum legal rent and that the 11 overcharges were not "the result of failure to take practical precautions against the occurrence of the violation." Plaintiffs are therefore entitled to recover damages to the extent of $25 for each of the 11 overcharges or $275.

For the reasons stated herein the judgment order of the Superior court of Cook county is reversed and the cause is remanded with directions to enter judgment for $275 in favor of plaintiffs and against defendants and to award plaintiffs such reasonable attorney's fees as they may be found to be entitled to.

*Judgment order reversed and cause remanded with directions.*

FRIEND, P. J., and SCANLAN, J., concur.