[Civ. No. 16375.   Second Dist., Div. Three.   Jan. 17, 1949.]

GEORGE G. GARCIA, Respondent, v. EBELING MOTOR CO., INC., Appellant.

Chase, Rotchford, Downen & Chase for Appellant.

Lyle W. Rucker for Respondent.

WOOD, J.—In this action, under the provisions of the Emergency Price Control Act of 1942, as amended, to recover three times the amount of an overcharge (in excess of the lawful

maximum or ceiling price) for an automobile, and to recover attorney's fees, plaintiff obtained judgment for $1,778.49 as treble damages, $250 as attorney's fees, and $43.56 costs. Defendant appeals from the judgment, and from the order denying its motion for a new trial.

Appellant contends (1) that since plaintiff did not actually pay any sum in excess of the ceiling price of the automobile, he is not entitled to recover anything; and (2) that the superior court did not have jurisdiction for the reason that the alleged amount of damages, namely, $1,779, was within the jurisdiction of the municipal court, and the inclusion of a demand for $500 as attorney's fees did not bring the action within the jurisdiction of the superior court.

There was a controversy at the trial as to the date when the automobile was sold. Plaintiff asserted that the date was July 31, 1946, and the defendant asserted that it was July 23, 1946. The date was significant for the reason there were no ceiling prices during the period of time between June 30, 1946, and July 25, 1946. (The President had vetoed a proposed bill to extend the Emergency Price Control Act beyond June 30, 1946, and it was not until·July 25, 1946, that a revised bill continuing the act in effect was approved.) Plaintiff testified that the first time he had any transaction with the defendant was on July 31, 1946, and at that time he went to defendant's place of business with his wife and his wife's mother. His wife and his wife's mother testified that they went with him to defendant's place of business on said date. Defendant's representative, who made the sale to plaintiff, was not present at the trial. A receipt, stating that a down payment on the automobile had been received on July 23, 1946, and a written contract, bearing the date July 23, 1946, were offered in evidence by defendant and were received. The court found that the contract was entered into, and the automobile was sold, on July 31, 1946, and the automobile was delivered to plaintiff on August 1, 1946. The court also found that the date, July 23, 1946, which was on the copy of the contract delivered to plaintiff, was wilfully affixed to said contract by the defendant with full knowledge that said date was erroneous and false. Appellant concedes that the evidence was sufficient to support those findings. Plaintiff also testified that a representative of the defendant company told him that the price of the automobile was $1,602; that on July 31, 1946, plaintiff made a deposit of $25 as part payment of the purchase price and obtained a receipt there-

for; that on the next day he returned to the defendant's place of business and paid an additional $775 in cash in part payment of the purchase price, surrendered the receipt for $25, and obtained a receipt which recited that $800 had been received for a down payment on the automobile on July 23, 1946; that when he obtained the receipt for $800 he signed an order slip for the automobile which recited that the selling price was $1,602; that after he had signed that document he returned it to defendant's salesman; that he returned the order slip because the salesman told him that he could not get into a certain room where the serial number was and could not make up the contract that night and that he (plaintiff) should come back the next day and get the contract; that he returned the next day, August 2d, and took delivery of the automobile, received the order slip, and signed a conditional sales contract which stated that the purchase price was $1,602, but he did not receive a copy of the contract at that time; that he took the order slip home and then noticed that the selling price was $2,195; that after he had taken the automobile home he raised a window of the automobile and noticed an O. P. A. price tag on the window which stated that the ceiling price was $1,602.17. The conditional sales contract was assigned by the defendant to a finance company, and thereafter the defendant received a letter from the finance company enclosing a copy of the contract, which copy recited that the selling price was $2,195, that $800 thereof had been paid, and that the balance was payable at the rate of $114.38 per month for 15 months. The lawful maximum or ceiling price of said automobile on July 31, 1946, was $1,602.17. This action was commenced on August 13, 1946. After plaintiff had made three or four monthly payments the automobile was repossessed by the finance company.

The Emergency Price Control Act of 1942, section 205(e), as amended in 1946 (60 Stats. 676, § 12(a); 50 U.S.C.A. App., § 925(e)), provides that if any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price, the person who buys such commodity may bring an action against the seller on account of the overcharge, and that in "any action under this subsection, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may deter-

mine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine. . . ."

The Emergency Price Control Act of 1942 defined the term "price" to mean "the consideration demanded or received in connection with the sale of the commodity." (56 Stats. 23, § 302(b); 50 U.S.C.A. App. § 942(b).) This definition has not been amended.

The act was declared by the Congress to be in the interest of national defense and security, to be necessary to the effective prosecution of the war; and it declared that the purposes of the act were to stabilize prices, to prevent unwarranted and abnormal increases in prices, to eliminate and prevent profiteering and other disruptive practices resulting from abnormal market conditions. (Price Control Act, 1942, § 1(a), 56 Stats. 23; 50 U.S.C.A. App. § 901(a).) The intent of the legislation is indicated by the comment of the Committee of the House of Representatives on Banking and Currency made at the time the legislation was enacted, which comment states that legislation to deal with inflationary tendencies is essential for the protection of the national defense and security, and that unless such legislation is enacted, inflationary increases in prices are inevitable, and if not prevented will lead to future deflation and depression, with economic chaos resulting therefrom. (See U.S. Code Congressional Service, 1942, p. 80.)

██ As above stated, appellant contends that plaintiff should not recover anything because he had not actually paid any sum in excess of the ceiling price. It argues (1) that the remedy of a buyer is to refuse to pay any sum in excess of the lawful ceiling price; (2) that the law does not contemplate that a buyer should proceed to pay the overcharge and then exact a penalty from the seller; (3) that if the buyer has not paid the agreed selling price he has breached the contract himself and is therefore not in a position to sue the seller for damages for breach of the contract; and (4) that if the buyer has not paid the overcharge he has not been damaged, that the right to recover treble damages is an incident to the right to recover the overcharge itself, and that until the buyer becomes entitled to recover the overcharge he has no right to treble damages.

All the arguments of appellant are based upon the erroneous assumption that the recovery allowed by the act is not a penalty. As above shown, the act provides that if a person selling a commodity violates a price schedule prescribing a maximum price he shall be liable for three times the amount

of the overcharge. Also, the act provides that the term "price" means "the consideration *demanded* or received in connection with the sale." (Italics added.) It is clear that the price demanded by appellant was $2,195, which was $592.83 more than the ceiling price. Appellant obtained a written contract from plaintiff whereby plaintiff agreed to pay that price, and appellant then sold and assigned the contract to a finance company. By reason of that transaction, appellant not only demanded the excessive price, but received that price less a discount to the finance company. Although plaintiff had not paid the amounts required under the contract, the contract was an outstanding obligation of plaintiff in the hands of a third person, and plaintiff was purportedly bound to pay the overcharge until it was determined by litigation or agreement that the overcharge was improper. It was not intended by the act, which was a measure necessary in wartime to stabilize prices and prevent disruptive practices resulting from market conditions, that the only remedy of a victim of wartime profiteering is to pay the ceiling price and then engage in litigation or other controversy in an attempt to retain possession of the commodity purchased, to clear his title thereto, and to be relieved of his purported obligation to pay the overcharge. Various other provisions of the act, which are referred to in the case of *Duffy* v. *Howell*, hereinafter cited, also indicate that the amount to be recovered under the act is a penalty. Furthermore, the fact that the administrator may bring the action, if the buyer does not bring it, indicates that the amount to be recovered is a penalty. In the case of *Porter* v. *Crawford & Doherty Foundry Co.* (C.C.A.), 154 F.2d 431, the administrator maintained such an action, and the court said, at page 432: "It is not questioned . . . that so far as concerns Sec. 925(e) appellant [administrator] is entitled to seek court action on any of the claimed violations of the Act." The amount to be recovered under the act is a penalty. In *Duffy* v. *Howell*, 73 Cal.App.2d Supp. 990 [166 P.2d 411], the court said, at pages 992-993: "A study of the amended act as a whole, convinces us of the legislative intent to penalize the making of a contract for a sale in excess of the ceiling price regardless of whether the amount paid thereon was in full, or in a sum, by way of partial payment, less than the proper ceiling price. As evidence of such intent the terms 'sell' and 'buy' are so defined by section 942(a), U.S.C.A., as to include 'sales, . . . and other transfers, and contracts and offers to do any of the foregoing.' Section 904, U.S.C.A.,

to which such definitions are also applicable, makes it unlawful to 'sell or deliver any commodity' in violation of any price fixing regulation or order, or to offer or attempt to do so. Section 925(e), U.S.C.A., under which this action is brought, also applies where any person 'selling a commodity' violates such a regulation, order or price schedule. The term 'price' is defined by section 942(b) as meaning 'the consideration demanded or received in connection with the sale of a commodity.' Section 925(e) provides that 'the word "overcharge" shall mean the amount by which the consideration exceeds the applicable maximum price.' '' It was also said correctly therein, at page 993: ''The penalty accrues when the overcharge on the price of a commodity is exacted, not when it is paid.'' In the case of *Bowles* v. *Farmers Nat. Bank of Lebanon, Ky.*, 147 F.2d 425, the administrator of the Office of Price Administration, sued under said act to recover three times the amount of an overcharge. The question therein was whether such cause of action survived the death of one charged with the violation, and in order to determine that question it was necessary to decide whether the act was penal in nature. The Circuit Court of Appeals said therein at page 428: ''We think that the original enactment of this section clearly provided for a penalty. The basic test whether a law is penal in the strict and primary sense is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual.'' The court therein, after quoting section 901 Appendix, 50 U.S.C.A., which states the purposes of the act, said (p. 428): ''This describes a threatened injury to the public. While private rights and interests are necessarily affected, the controlling purpose of the statute is to protect the public during the war emergency.'' It was also said therein, on the same page: ''The amount of such payments, if made to the injured person, supplies a direct and powerful incentive for the enforcement of the Act by the individual. . . . [citing case] As well stated in that case, the treble damages provision is intended to be sufficiently attractive to stimulate an aggrieved person to recover his losses and to enforce the law; and it is also intended to be sufficiently burdensome to deter potential violators and to punish actual violators. Moreover, if a sum of money is to be recovered by a third person for violation of a statute instead of the person injured . . . it constitutes a penalty rather than damages. . . . In the light of such considerations, the exaction established by this statute clearly falls within the classification of penalty.'' The court,

in the present case, found that the sale of the automobile for the sum of $2,195 (which was upon a conditional sales contract) was in excess of the ceiling price to the extent of $592.83. It was clear that appellant intentionally antedated the contract in order to make it appear that the sale was made at a time when there were no ceiling prices. The plaintiff herein was not required to pay any part of the overcharge in order to prosecute this action.

The argument of appellant, to the effect that if a buyer has not paid the overcharge he has not been damaged, assumes that the only damage resulting to a buyer, who has entered into a contract which includes an overcharge, is the amount of the overcharge paid. Even if the question of damage to the buyer should be regarded as material in a suit under this act, a buyer might suffer damage in various ways other than by paying the overcharge. If a buyer pursues the remedy suggested by appellant, that is, if he refuses to pay an overcharge, he might suffer greater detriment than he would suffer if he paid the overcharge. Upon such refusal, he might become involved in extended and expensive litigation regarding the alleged indebtedness and the possession of and title to the commodity purchased. Although the finance company took the contract subject to the equities existing between the original parties, the excessive demand of appellant and the sale of the contract involved plaintiff herein in further legal complications. Furthermore, where the contract provides that the balance (including the overcharge) is to be paid in monthly instalments, a buyer would suffer detriment each month by reason of the overcharge in that he would be required to pay larger monthly instalments.

As above stated, appellant also contends that the trial court herein did not have jurisdiction for the reason that the $1,779 sought to be recovered herein was within the jurisdiction of the municipal court, and that the inclusion of a demand for $500 as attorney's fees did not give the trial court jurisdiction. He argues that the attorney's fees are taxable as costs, and therefore the demand for attorney's fees does not affect the question of jurisdiction. This contention is not sustained. Section 205(e) of the Price Control Act, as amended in 1946 (60 Stats. 676, § 12(a); 50 U.S.C.A. App., § 925(e)), provides that in "any action under this subsection, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus . . . not more than three times the amount of the overcharge . . .." The act does not allow

attorney's fees as a part of the costs, but, on the contrary, as shown by the above quotation, allows attorney's fees as an item separate from costs. The attorney's fees are allowed under the provisions of the act as a primary part of the penalty. It is to be noted that the act provides for attorney's fees first and then states "plus an amount not more than three times the amount of the overcharge." The amount of the demand was within the jurisdiction of the superior court.

The judgment is affirmed, and the appeal from the order denying the motion for a new trial is dismissed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 17, 1949.