[Civ. No. 16328.   Second Dist., Div. Three.   Mar. 15, 1949.]

EVE PARSHALLE, Respondent, v. MARY CURL, Appellant.

Hahn, Ross, Goldstone & Saunders for Appellant.

Mark F. Jones and W. L. Engelhardt for Respondent.

WOOD, J.—Action to recover overcharges paid as rental for residential property. Defendant appeals from a judgment for plaintiff.

Plaintiff asserted at the trial that in January, 1946, she rented from defendant a dwelling house at 6672 Whitley Terrace in Los Angeles, including the garage and "the pagoda," for $85 per month. (The pagoda, located in the garden, consisted of two rooms—one above the other.) She testified that on January 7, 1946, she paid to appellant, upon her demand, a bonus of $450 cash. She also testified that she paid to appellant, upon her demand, the following amounts: $135 per month as rental for each of the months of April, May, and June, 1946; $140 per month as rental for each of the months of July, August, September, October, November, December, 1946, and January, 1947; and $450 as a bonus (about July 11, 1946), upon demand by appellant.

The court found that plaintiff rented the house, garage, and pagoda for $85 per month; that plaintiff paid to defendant as rental therefor the amounts which plaintiff testified that she had paid; and that, at the time the rental agreement was made and thereafter, the maximum rental fixed by the Office of Price Administration for the dwelling house at 6672 Whitley Terrace, including a garage and "the pagoda," was $85 per month.

Appellant alleged in her answer that about January 1, 1946, plaintiff rented a portion of the house at said address for $85 per month; that on April 7, 1946, plaintiff rented the pagoda at said address for $50 per month; and that about September 7, 1946, plaintiff rented the garage for $5.00 per month. The court found that it was not true that plaintiff rented the pagoda for $50 per month; and that it was not true that plaintiff rented the garage for $5.00 per month.

Appellant contends that the evidence is insufficient to support the finding that the maximum rental for the premises was $85 per month. Appellant argues that the maximum rental for the entire premises was $135 per month, that is, $85 per month for the house and $50 per month for the pagoda. (She does not assert that the charge of $5.00 per month for the garage was proper.)

Plaintiff testified that when she rented the place appellant told her that the rent was $160 per month and that she wanted $450 cash in advance, to be applied in part each month on the $160 per month—after the payment of $85 each month; that appellant said she was renting the entire place to her if she paid $450 in advance. Plaintiff also testified as follows: that the entire place consisted of the house, the garage, and the pagoda; that appellant refused to give her a receipt for the $450 paid in January, 1946; that when appellant was showing the property to plaintiff, at the time they were negotiating relative to it, she took plaintiff into the garden where the pagoda was located and stated that she did not have a key to the pagoda; she told plaintiff that plaintiff should pay all the utilities; and that during the time plaintiff occupied the premises she took care of the garden, put in over 100 plants, and watered the lawn daily. Plaintiff also testified that after she had rented the premises and had paid the $450, appellant told her that she had reserved one room in the house because she had had a lawsuit with the O.P.A. and she had to pretend that she lived there; that appellant did not live there, but rented the ''reserved'' room and a bathroom to someone else. She also testified that about April 7, 1946, the appellant told plaintiff that she intended to put a shoemaker in the pagoda; that if plaintiff did not want him there she would have to pay appellant $50 a month additional; plaintiff replied that she would pay it because there were no bath facilities in the pagoda and she did not want an occupant of the pagoda to use the bath facilities of the house she had rented; about May, 1946, when plaintiff purchased an automobile, she told

appellant that she needed the garage, and appellant replied that she wanted an additional $5.00 a month for the garage; and plaintiff agreed to pay said amount and did pay it commencing in July, 1946. Plaintiff testified further that on July 7, 1946, appellant demanded that plaintiff pay her an additional $450, and stated that if she wanted to stay there she would have to pay it; and plaintiff paid said $450 in addition to the $140 monthly rental.

Defendant denied that she demanded or received $450 in January or July, 1946, as a bonus, or as rent, or at all. About June, 1945, appellant signed and filed a registration statement with the Office of Price Administration covering the premises known as 6672 Whitley Terrace, and she stated therein that the rent on March 1, 1942 (the maximum rent date under the act) was $85, and that the "owner reserves one room."

On March 3, 1947 (after this action was commenced and about 11 months after she began collecting $50 per month for the pagoda), the appellant made application for the registration of two rooms at the rear of 6672 Whitley Terrace, in which application it was stated that the rooms were owner-occupied on the maximum rent date (March 1, 1942), and that they were first rented on April 7, 1946, for $50 per month. That application also recited that the rooms had no running or hot water, no toilet, and no bathroom. The record on appeal does not show the exact location of the two rooms at said address, but it will be assumed, from statements in the briefs, that this second application pertained to the pagoda referred to herein. With respect to the second application, the records of the O.P.A. show that on April 2, 1947, the area rent director notified appellant, in writing, that he proposed to decrease the maximum rent from $50 per month to $25 per month. No order had been issued concerning the proposed decrease in rent, prior to the trial of this case, for the reason that the director "had to make a determination as to whether subtenancy existed in the unit," and for the reason that the rent regulations, under which the notice had been given, had ceased to be in effect, and the director was required to issue a new order under the new rent control act of 1947. It therefore appears that in June, 1945 (about six months before renting any part of the place to plaintiff), appellant registered a dwelling house at 6672 Whitley Terrace for $85 per month, and she reserved one room and made no mention of the pagoda. It also appears that about a month after this action was commenced (which was about 14 months after renting to

plaintiff, and about 11 months after appellant began collecting $50 per month for the pagoda), she applied for registration of the pagoda at $50 a month; and that, at the time of the trial, the director had not fixed the rental under that application. In support of her argument that the maximum rental for the premises was not $85 per month, she refers to the testimony of a representative of the Office of Price Administration that the maximum rental for the house was $85 per month, and that the maximum rental for the pagoda at the time of the trial was $50 per month; and she refers to records of that office.

On June 25, 1945, the area rent director made an "Order Determining Maximum Rent." At a place near the top of the order, immediately below the printed words, "Concerning (description of accommodations)," there were the following typewritten words: "6672 Whitley Terrace, Los Angeles, California." Below those words the director made the following order: "The Rent Director has duly considered the above matter and: . . . The Maximum Rent for the above-described accommodations is hereby fixed at $85.00 per month . . . the accommodations consisting of six rooms, furnished, with garage. Tenant supplies all utilities. This order is effective to establish the Maximum Rent as of November 1, 1942." The dwelling house at said address consists of six rooms.

It appears from a memorandum of the trial judge that the judgment for plaintiff, which was for $2,895, consisted of the following items: $450 bonus, paid on January 7, 1946; $450 bonus, paid about July 11, 1946; $1,350, being treble the alleged overcharge of $50 per month for the pagoda for 9 months (April, 1946, to January, 1947, inclusive,—except July); $55, being the alleged overcharge for July for the pagoda and garage (not trebled); $90, being treble the overcharge of $5.00 per month for the garage for six months (August, 1946, to January, 1947, inclusive); and $500 for attorney's fee.

The evidence was sufficient to support the findings of the court that plaintiff paid the two bonuses mentioned. ▮ However, the $450 bonus which was paid on January 7, 1946, should not have been included as a part of the judgment for the reason that this action to recover it was not commenced within one year from the date the bonus was paid. This action was commenced February 4, 1947. Section 205(e) of the Emergency Price Control Act of 1942, as amended, (66 Stats. 676; 50 U.S.C.A.App. 925(e)) provides: "If any person

selling a commodity violates a regulation, order, or price schedule prescribing a maximum price . . . the person who buys such commodity . . . may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. . . ." No exception, applicable to the present case, is thereinafter provided which affects said provision relative to commencing the action within one year. Section 925(e) of the act also provides that "the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity. . . ."

■ Also, the $450 bonus which was paid about July 11, 1946, should not have been included in the judgment for the reason that no price-control statute was in effect at the time such payment was made. During the period of time between June 30, 1946, and July 25, 1946, there was no price-control statute—the President had vetoed a proposed bill to extend the Emergency Price Control Act beyond June 30, 1947, and it was not until July 25, 1946, that a revised bill continuing the act in effect was approved. ■ It appears that the trial court allowed recovery of the two bonuses upon the basis of money had and received, as alleged in the 11th cause of action. Except for the provisions of the price-control statute, plaintiff would have had no cause of action for the recovery of any money paid to defendant, pursuant to the contract between them, for rent or for the privilege of renting defendant's property. As above stated, the provisions of the price-control statute precluded the recovery of the bonus paid more than a year before the commencement of the action; and there was no price-control statute when the bonus was paid in July, 1946. The theory of money had and received is not applicable in the matter of the bonuses under the circumstances herein.

■ The item of $1,350, which was treble the amount of the alleged overcharges for the pagoda for the 9 months (not including July), should not have been included in the judgment. The records of the Office of Price Administration show, as above indicated, that the area rent director recognized the belated registration of the pagoda as a registration of a rental unit separate and apart from the dwelling house. The director did not reject that registration, but on the contrary his act in giving notice of his intention to decrease the rent of the pagoda from $50 to $25 indicates that, although he did not approve the amount stated as rental in the registration, he

did approve the registration of that building as a rental unit. Also, the order of the rent director made on June 25, 1945, above referred to, fixed the maximum rent for the accommodations at 6672 Whitley Terrace at $85 per month, and stated that the accommodations consisted "of six rooms, furnished, with garage." The pagoda was not mentioned in that order, and there were, as above stated, six rooms in the dwelling house at said address. Although the evidence, as to the rental terms which the parties themselves actually agreed upon, was sufficient to support the finding of the trial court that the pagoda was included in the rental agreement, it must be concluded by this court that the rental director did not include the pagoda as a part of the accommodations for which he fixed the maximum rent at $85 per month. ■ A rent director, acting as agent of the Price Administrator, has the exclusive right to determine the maximum legal rent that may be charged for housing accommodations, and a state court does not have jurisdiction to enjoin the issuance of a rent order by the rent director, but does have concurrent jurisdiction with the federal courts in civil enforcement suits under the Price Control Act. (*Bowles* v. *Willingham*, 321 U.S. 503, 512 [64 S.Ct. 641, 646, 88 L.Ed. 892, 901-902].) A state court has no jurisdiction with respect to a maximum rent order of a rent director other than to enforce the ceiling price. (*Thompson* v. *Taylor*, 60 F.Supp. 395, 397.) Findings of fact which are "in conflict with the records, findings and orders," of the Office of Price Administration and the rent director are erroneous. (*Zaker* v. *Lapa*, 332 Ill.App. 602, 611-612 [76 N.E.2d 521, 526].) In the last cited case, it was stated (p. 612 of first citation, and p. 526 of second): "The special findings of the trial judge were undoubtedly predicated on what he considered the obvious equities of the case. However, in making these findings the trial judge ignored and disregarded the records, findings and orders of the Office of Price Administration and its Rent Director, which constituted the only competent evidence in the record on the question as to whether defendants overcharged plaintiffs $20 a month for 35 months." It therefore appears, from the order of the rent director fixing the maximum rent for the dwelling at $85 per month without including the pagoda, and from the act of the director in permitting the registration of the pagoda as a rental unit, that the pagoda was not a part of the accommodations for which the maximum rent was fixed at $85. Therefore the charge of $50 per month for the pagoda was not an overcharge for

the accommodations included in the maximum rent of $85 per month.

A question arises as to whether plaintiff was entitled to recover the $50 per month charged for the pagoda, under the circumstances here, where the defendant had not registered the pagoda before the action was commenced and where the rent director had not approved that amount (at the time of the trial) as a proper charge. Under the provisions of the act and the rent regulations the defendant was required to file a registration statement within 30 days after the pagoda was rented. Her failure, however, to register the property within said time did not make the rental of $50 per month unlawful, but she had the right to collect as rental for the pagoda, subject to readjustment by the rent director, a rental of $50 per month fixed by herself. In the case of *Woods* v. *Stone*, 333 U.S. 472 [68 S.Ct. 624, 92 L.Ed. 815] the owner of a house rented it for $75 per month, but did not register the property with the rent director. Eight months after renting the property the owner sold it, and the new owner registered the property, thereby bringing to the notice of the rent director the fact that the former owner had rented the property without complying with the registration requirement. The rent director thereupon reduced the rental from $75 to $45 per month, effective from the date of the first rental, and ordered that the former owner refund the excess to the tenant. The court therein said, at page 476 (p. 626 of 68 S.Ct.; p. 820 of 92 L.Ed.): "The landlord failed to register the property. His rental operations escaped notice of the authorities until fortuitously disclosed. He *collected as he had a right to do, but subject to readjustment, a rental fixed by himself* that was found on inquiry to exceed by 66⅔% what was fair rental value of the property. He was ordered to refund the excess. He now contends that he can keep all of it that he collected upwards of a year before the action was commenced, upon the ground that the one-year statute of limitations runs, not from the date of his default in obeying the refund order, but from the date of each collection of rental. We cannot sustain his contention. The statute and regulations made his *rentals tentative but not unlawful. Until the contingency of readjustment occurred, the tenant could have had no cause of action* for recovery of any part of the rental exacted by the landlord." (Italics added.) In the present case it appears, as above stated, that no readjustment of the rental fixed by the landlord had occurred at the time

the action was filed or at the time it was tried. It therefore appears that plaintiff herein had no cause of action for recovery of any part of the $50 per month for the pagoda, which was collected by the landlord. (It may be noted here that on July 25, 1947, two weeks after the trial, the rent director made an order changing the pagoda rent from $50 to $25 per month, effective the next rent date,—there was no order that any refund be made.)

The item of $55 for rent of the pagoda and garage for July, 1946, should not have been included in the judgment for the reason there was no price-control statute in July at the time that payment was made.

It was proper to include in the judgment the item of $90, being treble the overcharge of $5.00 per month for the garage for six months. The order of the rent director, made on June 25, 1945, fixing the maximum rent for 6672 Whitley Terrace at $85 per month, specifically stated that the garage was included as a part of the accommodations. Defendant overcharged plaintiff $5.00 per month for the garage for six months.

The total of the items, above mentioned, which should not have been included in the judgment is $2,305. The judgment should be modified by deducting said amount therefrom. The only item of the judgment remaining after such deduction, other than the item of $500 for attorney's fees, is $90 which is treble the overcharges for the garage. In determining the amount to be allowed as attorney's fees, the trial court of course considered, among other things, the amount for which the judgment was rendered. Since the amount of the judgment is to be reduced on appeal as above indicated, the amount allowed for attorney's fees should be reduced to $250. In fixing such amount for attorney's fees, consideration is given, among other things, to the fact that attorney's fees are allowed under the provisions of the act as a penalty. (*Garcia* v. *Ebeling Motor Co.*, 89 Cal.App.2d 688, 694 [201 P.2d 854].)

The judgment is modified by reducing it from $2,895 to $340, and as so modified the judgment is affirmed. Each party to pay her own costs.

Shinn, P. J., and Vallée, J., concurred.