### BURNETT v. GOSSETT.

#### Civ. No. 1332.

United States District Court
W. D. South Carolina, Spartanburg Division.

May 22, 1953.

James B. Stephen and James R. Turner, Spartanburg, S. C., for plaintiff.

Odom, Bostick & Nolen, Spartanburg, S. C., for defendant.

WYCHE, Chief Judge.

This is a civil action for damages for violation of certain ceiling price regulations pertaining to the sale of a used car and is brought under Title IV, section 409, Defense Production Act of 1950, as amended; 64 Stat. 811; 50 U.S.C.A.Appendix, § 2109 (c).

In compliance with rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

1. On or about April 4, 1952, plaintiff purchased from defendant one 1941 Ford Tudor automobile, motor number 18-6623114, for use other than in the course of trade or business.

2. Plaintiff did not pay the entire purchase price in cash, but on the date of sale made a non-interest bearing note secured by a chattel mortgage on the car payable to defendant's order, in the amount of Five Hundred ($500) Dollars. Defendant discounted this note and mortgage to Royal Finance Company, Inc., Spartanburg, South Carolina, for Three Hundred, Seventy Five ($375) Dollars. In addition to the five hundred dollar note, defendant received Sixty Eight ($68) Dollars, in cash and allowed Three Hundred ($300) Dollars, on a 1940 Chevrolet which was traded in by plaintiff. There was an outstanding mortgage on the Chevrolet, and defendant paid off the balance due on said mortgage, which balance was One Hundred, Thirty Four ($134) Dollars. Thus plaintiff's equity in the Chevrolet was valued at One Hundred, Sixty Six ($166) Dollars.

3. A paper entitled "Bill of Sale" was signed by Grady T. Burnett and is substantially as follows: "This will certify that I have this day purchased from 'Bob' Gossett's Used Car's the automobile described, upon the terms and conditions hereinafter set forth. 1941 Ford 2 dr. Sdn. Cash Selling Price of Car $442 Less Used Car—, Make 1940 Chv. 2 dr. Cash or Check Down Payment Check on Royal Fin. Co. $375.00", marked "Paid in Full". There is not entered on the so-called "Bill of Sale" the price allowed, or the trade-in value of the 1940 Chevrolet.

4. There was in force and effect on the date of said sale a General Ceiling Price Regulation, 16 FR 808, providing for ceiling prices on certain commodities, and also Supplementary Regulation 5, 16 FR 1769, which supplements the General Ceiling Price Regulation and specifically provides for ceiling prices on certain automobiles.

5. Plaintiff claims he was allowed Three Hundred ($300) Dollars, on the Chevrolet, and defendant claims that he only allowed One Hundred, Forty Two ($142) Dollars, on the trade-in for the Chevrolet. Section 7(b) (3) of Supplementary Regulation 5, 16 FR 4652, prohibits as an evasive practice "Giving an allowance or compensation for the trade-in, exchange or transfer of an automobile which is less than its reasonable value to the dealer. The reasonable value of a used automobile to the dealer must bear a reasonable relationship to the ceiling price of the used automobile as established by section 4 of this regulation." Section 4 of Supplementary Regulation 5 prescribes the method of ascertaining the ceiling price of used cars by referring to certain used car market reports. It is admitted that the ceiling price of the 1940 Chevrolet traded in was Three Hundred, Seventy Nine ($379) Dollars. The defendant subsequently sold the Chevrolet for Three Hundred, Twenty Five ($325) Dollars, and from the evidence I find that the 1940 Chevrolet was reasonably worth Three Hundred ($300) Dollars, to the defendant car dealer.

6. Since defendant discounted the five hundred dollar note to the finance company for $375, I find that the difference of $125 represents "finance charges", or what is sometimes called "time price differential". It is admitted that "time price differentials" are based on the deferred balance, that is, the balance to be financed, and after discounting the note, defendant received Six Hundred, Nine ($609) Dollars, or the equivalent in value.

7. The ceiling price of the 1941 Ford in question was admittedly Four Hundred, Forty Two ($442) Dollars. Section 9 of the General Ceiling Price Regulation 16 FR 808, provides: "Customary Price Differentials. Your ceiling prices, when determined, shall reflect your customary price differentials, including discounts, allowances, premiums and extras, based upon differences in classes or location of purchasers, or in *terms and conditions of sale* or delivery." (Emphasis added)

8. Had defendant sold the car for the ceiling price of Four Hundred, Forty Two ($442) Dollars, the balance to be financed would have been Two Hundred, Eight ($208) Dollars, ($442 less trade-in allowance and $68). The customary time differential or finance charges on a Two Hundred, Eight ($208) Dollars, balance would have been Ninety Three ($93) Dollars. Thus the total allowable ceiling price for the sale in question, after adding the customary time differential as permitted by Section 9 of the General Ceiling Price Regulations, amounts to Five Hundred, Thirty Five ($535) Dollars, ($442 plus $93).

9. Section 7(b) (6) of Supplementary Regulation 5, 16 FR 4652, specifically prohibits as an evasion of said regulations: "Establishing terms or conditions of sale more onerous to purchasers than they have customarily been, except to the extent allowed by this regulation." In establishing the terms of this sale, the defendant fixed a time differential or finance charge of One Hundred, Twenty Five ($125) Dollars, on a Three Hundred, Seventy Five ($375) Dollars, deferred balance, which is Thirty Two ($32) Dollars, more than the time price differential or finance charge which defendant customarily charged on a Two Hundred, Eight ($208) Dollars, deferred balance. The establishment of this more onerous time differential is not excepted by the regulations.

10. The defendant overcharged plaintiff by One Hundred, Ninety ($190) Dollars. This overcharge may be computed by subtracting the total allowable time ceiling price of Five Hundred, Thirty Five ($535) Dollars, from the total time price actually charged of Seven Hundred, Thirty Four ($734) Dollars. From this balance of One Hundred, Ninety Nine ($199) Dollars, deduct the South Carolina sales tax of Nine ($9) Dollars.

11. A reasonable attorneys' fee for plaintiff's attorneys is Two Hundred ($200) Dollars.

### Conclusions of Law

1. The General Ceiling Price Regulation and Supplementary Regulation 5 are applicable to the sale in question. The

regulations are printed in the Federal Register and the Court takes judicial notice thereof. 44 U.S.C.A. § 307, 49 Stat. 502.

2. The Act defines "overcharge" as "the amount by which the consideration exceeds the applicable ceiling [price]." 64 Stat. 811, section 2109(c), Title 50 U.S.C.A. Appendix.

■ 3. This was a time sale, and the total time price was Seven Hundred, Thirty Four ($734) Dollars. The $500 note, which included the finance charges, was payable to defendant's order and represented a portion of the purchase price. The fact that defendant subsequently discounted the note to a finance company for $375 does not change the character of the transaction to a loan from the finance company.

The Defense Production Act of 1950, does not specifically define the word "price", but the Emergency Price Control Act of 1942, Title 50 U.S.C.A.Appendix, § 901 et seq., 56 Stat. 36, apparently serves as a model for the present act insofar as price controls are concerned. The old Emergency Price Control Act defined "price" as the consideration demanded or received in connection with a sale. Section 942(b), Title 50 U.S.C.A.Appendix. In the case of Garcia v. Ebeling Motor Co., 89 Cal.App.2d 688, 201 P.2d 854, decided under the old Price Control Act, it was held that an automobile dealer who obtained a written contract from a purchaser to pay excessive price, and then sold and assigned the contract to a finance company, not only demanded, but also received, an excessive price and similarly, in the case at bar, the $500 note made by plaintiff is a part of the purchase price received by defendant.

■ 4. Defendant has in the past sold automobiles on a time basis, and in doing so, customarily added a finance charge on time price, differential to the selling price. This price differential is based on the deferred balance. Section 9 of the General Ceiling Price Regulation, permitting the seller to add on to the purchase price a differential based on terms of sale, should be considered in connection with Section 7(b) (6) of Supplementary Regulation 5, which makes it an evasive practice for a seller to establish terms of a sale more onerous to purchasers than they customarily were. Since the time price differential would have been $32 less had defendant charged ceiling and the deferred balance thereby reduced, defendant has established more onerous terms in selling plaintiff the automobile, and that amount is properly included in the overcharge.

■ 5. Defendant has overcharged plaintiff in the amount of One Hundred, Ninety ($190) Dollars, and plaintiff is entitled to judgment against defendant in the sum of One Hundred, Ninety ($190) Dollars. Plaintiff is further entitled to judgment against defendant in the amount of Two Hundred ($200) Dollars, as attorneys' fees, plus the costs of this action.

It is, therefore, Ordered, Adjudged and Decreed, that plaintiff have judgment against defendant in the amount of Three Hundred, Ninety ($390) Dollars, plus the costs of this action.