No. ——.  MORSE ET AL. v. BOSWELL ET AL.;
No. ——.  BERKE ET AL. v. MACLAUGHLIN ET AL.;
No. ——.  MIAZGA ET AL. v. MACLAUGHLIN ET AL.;
No. ——.  FELBERBAUM ET AL. v. MACLAUGHLIN ET AL.; and
No. ——.  LOONEY ET AL. v. MACLAUGHLIN ET AL. C. A. 4th Cir.  Applications for stays presented to MR. JUSTICE DOUGLAS and by him referred to the Court, denied.  *Elsbeth Levy Bothe* for Morse et al.; *Francis V. Lowden, Jr.,* for Berke et al.; *Mrs. Bothe* for Miazga et al.; *Philip J. Hirschkop* and *Michael J. Kunstler* for Felberbaum et al.; and *Mr. Lowden* for Looney et al. *Solicitor General Griswold* in opposition.

MR. JUSTICE DOUGLAS, dissenting.

On April 10, 1968, the President delegated to the Secretary of Defense power to activate units of the Ready Reserve.[1]  On the following day, after receiving

---

[1] Exec. Order No. 11406, 33 Fed. Reg. 5735 (1968).

a similar delegation of authority to activate such units from the Secretary of Defense,[2] the Secretary of the Army called several units of the Ready Reserve and their members to active duty.[3] Applicants, who are members of those units, are challenging that call to active duty on the ground that it exceeds the authority of the Secretary of the Army, and is a violation of their enlistment contracts. After unsuccessfully seeking release from active duty by writ of habeas corpus, and before being able to petition this Court for certiorari, applicants were prepared for immediate shipment to Vietnam. To preserve their avenues of review they sought and I granted interim stays pending submission of the stay applications to the full Court.[4] The question now before the Court, therefore, is whether these stays should continue pending our consideration of their petitions for certiorari.

Questions underlying the merits, which have already produced some judicial disagreement,[5] are twofold:[6] first, an alleged usurpation by the Secretary of the

---

[2] Memorandum for Secretaries of the Military Departments, April 11, 1968, as cited in Brief for Appellants 5, *Morse* v. *Boswell*, 401 F. 2d 544.

[3] Joint Message form DA 859314, April 11, 1968, as cited in Brief for Appellants, *ibid.*

[4] Applicant in *Winters* v. *United States*, 390 U. S. 993, had been called to duty as an individual rather than as part of a unit; and unlike applicants in these cases, apparently did not challenge the authority of the Secretary of the Army to call him for a full 24 months of active duty irrespective of time already served on active duty.

[5] Compare *Winters* v. *United States*, 281 F. Supp. 289 (D. C. E. D. N. Y.), aff'd per curiam, 390 F. 2d 879 (C. A. 2d Cir. 1968), with *Gion* v. *McNamara*, Civ. No. 67–1563 (D. C. C. D. Calif., January 9, 1968).

[6] Applicants have also raised other questions which I consider too unsubstantial to discuss.

Army of the limited authority delegated him; second, a purported conflict between the conditions of enlistment under which applicants entered the reserves and the subsequent Act of Congress calling them to active duty.

## I.

*First.* Applicants argue that the Secretary of the Army improperly called them to active duty for a full period of 24 months, without giving them credit for time already served on active duty. They claim that, in doing so, he exceeded the power granted him. To substantiate their claim, applicants rely on the specific language of delegation, on the treatment of other reservists similarly situated, and on the original intent of Congress.

The language of delegation is in § 101 (e) of Pub. L. 89–687, Title I, October 15, 1966, 80 Stat. 981, 10 U. S. C. § 263 n. (1964 ed., Supp. III), under which applicants were called. Congress authorized the President to activate "any *unit* of the Ready Reserve of an armed force for a period of not to exceed twenty-four months." (Emphasis added.) The President, in turn, delegated his authority under subsection (e) to the Secretary of Defense to activate "any *unit* in the Ready Reserve . . . for a period of not to exceed 24 months." [7] The Secretary of Defense then delegated his authority by that same language to the Secretary of the Army. [8] The Secretary of the Army, however, called "[t]he above *units and [individual] members thereof* . . . to active duty for 24 consecutive months . . . ." [9] Thus, instead, of calling the above units to active duty and granting their individual members credit for time already served on active duty, he ordered the individuals themselves to active duty for 24 consecutive months, irrespective of any time

---

[7] *Supra,* n. 1 (emphasis added).

[8] *Supra,* n. 2.

[9] *Supra,* n. 3 (emphasis added).

they may have already served on active duty. In doing so, he seems to have gone beyond the above language of delegation which referred exclusively to *units*. Moreover, he seems to have violated the organic language of Pub. L. 89–687, Title I, § 101 (c), October 15, 1966, 80 Stat. 981, which provides that:

> "A member ordered to active duty under this section may be required to serve on active duty until his total service on active duty or active duty for training equals twenty-four months."

To uphold the Secretary's order would seem to discriminate against these applicants called to active duty *as part of units* under § 101 (e) in favor of those reservists called to active duty as *individuals* under §§ 101 (a) and (b), by withholding from the former credit which is concededly accorded the latter.[10]

Congress authorized the President to recall the Ready Reserve for two stated purposes: first, to free the President to mobilize those men without forcing him to declare a national emergency;[11] second, and more relevant to

---

[10] In enacting Pub. L. 89–687, § 101, Congress made a distinction between reservists called as individuals and reservists called as units. That distinction, however, related only to its desire to keep reserve units as much intact as possible; consequently, it only authorized the call of those individual reservists who were not attached to such units, who had not been participating satisfactorily in their present units, or who had had less than 120 days of active duty experience. The distinction between individuals and units would seem to have nothing to do with the question whether reservists called as part of units should be credited for time already served on active duty. In making permanent the President's temporary authority to activate for 24 months those individuals not participating satisfactorily in their reserve units, Congress reaffirmed its intention to credit them for time already served on active duty. Pub. L. 90–40, June 30, 1967, § 6, 81 Stat. 105.

[11] 112 Cong. Rec. 19718 (1966) (remarks of Senator Russell, Chairman of Senate Armed Services Committee, and cosponsor of the amendment, which became Pub. L. 89–687).

this inquiry, to make the active duty obligation of those who enlist in the reserves commensurate with that of those who are drafted. It was felt that young men were enlisting in the reserves "to escape active military service in South Vietnam"; [12] that Congress had allowed "the 6-month [reserve] training program to become 'an umbrella' for avoiding active service at a time when we are daily inducting large numbers of men into the active forces to fight in Vietnam"; [13] and, therefore, that "it was only fair that these reservists be put on the *same basis for service* in Vietnam as new enlistees and draftees." [14] Thus, it seems that Congress intended to subject reservists to the same obligation for two years' active duty as is borne by draftees. To do so, it allowed the President to call them for the balance between the time they had already served on active duty and the outer time limit of 24 months.

The President and the Secretary of Defense apparently read the Act of October 15, 1966, as I do; for each of them activated only units of the reserve for 24 months. And a unit, of course, can serve 24 months even though its original members, having already served some time, are sooner discharged. The Secretary of the Army, on the other hand, has subjected these reservists to an additional obligation of 24 months over and above time already served.

## II.

*Second.* The question just discussed covers, so far as I can tell from the fragmentary pleadings and findings, all of the applicants. The second question reaches

---

[12] 112 Cong. Rec. 19724 (1966) (remarks of Senator Lausche).

[13] 112 Cong. Rec. 19720 (1966) (remarks of Senator Symington, member of Senate Armed Services Committee).

[14] 112 Cong. Rec. 19500 (1966) (remarks of Senator Saltonstall, ranking minority member of the Senate Armed Services Committee and cosponsor of the amendment) (emphasis added).

some of the applicants, but just how many I do not know. The record is not very revealing. But on oral argument, various attorneys stated that the contracts of enlistment vary. According to these informants, some provide for the rendering of active duty "in the event of a mobilization or emergency." Others provide for active duty in "time of war or of national emergency declared by Congress" as provided in 10 U. S. C. § 672. It should not lightly be concluded that a contract has been unilaterally changed by one party,[15] or that the United States as a party will breach its contract. Cf. *Smyth* v. *United States*, 302 U. S. 329.

Where the enlistment contract provides for service in the event of "a mobilization or emergency," I would assume that a wide variety of events might encompass each term. Indeed the very summoning of reserves to active duty might itself be sufficient to constitute the condition subsequent. But where the enlistment contract contains a provision that active duty is only required in "time of war or of national emergency declared by Congress," I would, if possible, read the Act of October 15, 1966, to preserve that promise solemnly made to the reservists and not to cover those who were specifically required by contract to serve only in "time of war or of national emergency declared by Congress."

I assume that it is within the power of Congress to change existing law and no type of estoppel interferes with its law-making power. See Stone, J., concurring, in *Perry* v. *United States*, 294 U. S. 330, 359. The disappointment realized by those who relied only on general law but did not have that explicit promise from their government in contract form is disappointment of the kind shared by all citizens in a society of shifting law.

---

[15] Cf. *Bell* v. *United States*, 366 U. S. 393; *Perry* v. *United States*, 294 U. S. 330; *In re Grimley*, 137 U. S. 147, 150.

Where a reservist, however, has counted on a declaration of war or of an emergency before he is called up and has a contract calling for reserve duty on those precise terms, I would, if possible, read subsequent legislation so as to preserve the promise made in that enlistment contract. Cf. *Woods* v. *Stone,* 333 U. S. 472, 481 (dissenting opinion). 10 U. S. C. § 673 subjects reservists to call "[i]n time of national emergency declared by the President after January 1, 1953, *or when otherwise authorized by law.*" The Congress has not yet declared either war or national emergency within the meaning of § 672; nor has the President declared a national emergency within the meaning of § 673. As stated by Senator Russell: [16]

> "Mr. President, I cannot see how any realistic answer can be raised against this amendment [calling up the reserves]. They say, 'You can call up the units.' In the first place, it cannot be done, because the President of the United States has to declare a national emergency, and very naturally he does not want to declare a national emergency at this time after we have gone this far without it. . . . [A] declaration of a national emergency would make us look ridiculous in the eyes of the world—to declare a state of emergency in regard to a third-rate power like North Vietnam."

Thus, the only other provision which §§ 672–673 include as a condition prescribed by law for activating the reserves under the second type of enlistment contract described above lies in the phrase "or when otherwise authorized by law."

The phrase in § 673 "when otherwise authorized by law" is not without meaning. It plainly refers to those additional conditions—other than war or national emer-

---

[16] 112 Cong. Rec. 19726 (1966) (Chairman of Senate Armed Services Committee).

gency—under which members of the reserve can be called to active duty.[17]

One more issue remains. It has been suggested that 10 U. S. C. § 263 gives Congress the power to call the reserves not just in time of war or national emergency, but "[w]henever . . . needed for the national security." No one, however, disputes that power. For the issue is not the plenary power of Congress under the Constitution, but how legislation shall be read in order, if possible, to avoid creating a "credibility gap" between the people and their government.

## III.

"The war power of the United States, like its other powers . . . is subject to applicable constitutional limitations." *Hamilton* v. *Kentucky Distilleries Co.*, 251 U. S. 146, 156. For that reason, this Court will exercise jurisdiction to review criminal adjudication by the military of civilian (*Reid* v. *Covert*, 354 U. S. 1) and military (*Burns* v. *Wilson*, 346 U. S. 137) personnel alike and to review administrative action by the military. Thus, in *Orloff* v. *Willoughby*, 345 U. S. 83, where a doctor inductee complained that the Secretary of the Army had wrongfully denied him medical detail, we were unanimous in agreeing that we had jurisdiction to review the power of the Secretary; that he had no power to deny petitioner such medical assignments; and that we were prepared to prevent him from doing so. Similarly here, where the Secretary purportedly has no power to recall reservists whom he promised to activate only

---

[17] Under 10 U. S. C. § 672 (b), a reservist may be called to active duty at any time for a period of 15 days. Pursuant to 10 U. S. C. § 679 a reservist may sign an active duty agreement by which he obligates himself to serve at any time on active duty that he is called; furthermore, that obligation may be extended beyond the expiration date of the agreement in times of war or national emergency. 10 U. S. C. § 672 (d).

in war or national emergency, we have jurisdiction to prevent him from doing so, at least where Congress has not precluded such jurisdiction. See *Harmon* v. *Brucker,* 355 U. S. 579, 581–583.

I would continue the stays until the merits of this important controversy can be resolved.